[No. D046453. Fourth Dist., Div. One. Jan. 24, 2007.]

CELIA AMBRIZ, Plaintiff and Appellant, v.
MARK KELEGIAN et al., Defendants and Respondents.

**COUNSEL**

Law Offices of Leon J. Saad & Associates, Leon J. Saad; Carla DeDominicis; Singleton & Associates and Terry Singleton for Plaintiff and Appellant.

Sheppard Mullin Richter & Hampton, Robert Gerber and Karin Dougan Vogel for Defendants and Respondents.

**OPINION**

**AARON, J.—**

I.

INTRODUCTION

Plaintiff Celia Ambriz appeals from a judgment of the trial court entered after the court ruled in favor of defendants Mark Kelegian, Thomas Morgan, and Kelegian, Reed & White, LLP, on their motion for summary judgment. Ambriz hired Kelegian to represent her in a premises liability action she filed against the owners and managers of Ambriz's apartment complex, after she was raped by an intruder in a storage room of the complex. The trial court in Ambriz's premises liability case granted the defendants' summary judgment motion. Ambriz then filed a legal malpractice action against Kelegian and the other respondents, alleging that they failed to conduct a sufficient investigation, failed to propound necessary discovery, and failed to prosecute Ambriz's claims. Respondents brought a motion for summary judgment, contending that even if they did breach a duty of care owed to Ambriz, she could not demonstrate prejudice because she would not have been able to establish landowner duty or causation in the underlying premises liability action. The trial court granted respondents' motion for summary judgment and entered judgment in their favor.

On appeal, Ambriz asserts that the trial court erred in improperly excluding a substantial portion of her evidence, and in applying "incorrect legal principles" to the case. We conclude that the trial court erred in granting respondents' motion for summary judgment because the court incorrectly determined that Ambriz could not, as a matter of law, establish causation in the premises liability case.

II.

FACTUAL AND PROCEDURAL BACKGROUND[1]

A. *Factual background*

1. *The rape at Casa Escondida*

On January 26, 2002, Ambriz was assaulted and raped by an intruder at Casa Escondida, the apartment complex in Escondido, California where Ambriz lived.

---

[1] Because this appeal is from the grant of summary judgment in favor of respondents, we review the evidence in the light most favorable to Ambriz. (*Fischer v. First Internat. Bank* (2003) 109 Cal.App.4th 1433, 1438 [1 Cal.Rptr.3d 162].)

Casa Escondida comprises 330 rental units. The apartment complex received a variance from the City of Escondido, allowing it to exceed typical density limits for a property of its size. As a condition of being granted the variance, Casa Escondida is required to rent to senior citizens or disabled individuals. Casa Escondida's tenant population consists of lower income, elderly individuals, many of whom are female.[2]

Ambriz had been told that Casa Escondida was a "secured community," and she had seen it marketed as a "controlled access" community, in that the complex claimed that it maintained a locked entry gate and that the doors to the buildings were secured. However, the entry gate was often chained open. An onsite security guard had reported to Casa Escondida management that male intruders were gaining access to the building interiors. At the time of Ambriz's rape, three of the four entrances to Ambriz's building did not close and lock properly because the mechanisms on the entrance doors were broken. Residents had complained, but the doors were not repaired.

The rapist was a transient who had been seen around the complex on a number of occasions over a period of more than eight months prior to the rape. He was often found sleeping on benches within the Casa Escondida complex. The transient regularly asked the residents, including Ambriz, for money. In December 2001, he became more aggressive and began to frighten Ambriz and other tenants. That month, Ambriz complained to the management that the doors to the buildings would not lock and that this transient was scaring her. Ambriz was told that management would "take care of it."

A police detective who investigated Ambriz's rape testified that the lack of evidence of a forced entry indicated that it was more likely than not that the rapist had entered the building through an open door.

### 2. Ambriz's underlying civil action

After the assault, Ambriz began seeing a rape counselor. The counselor recommended that Ambriz discuss her case with Attorney Kelegian. Ambriz met with Kelegian, who told her that he would personally handle her case and that he was the best lawyer she could get to help her. According to Ambriz, Kelegian did not inform her that another attorney would be working on her case. Ambriz saw Kelegian on only one other occasion, when he attended her deposition.

---

[2] The trial court sustained on relevance grounds respondents' objection to this portion of the deposition testimony of David Mykytuik, who worked as a security guard at Casa Escondida prior to and after Ambriz's rape. Although the trial court generally has wide discretion in making evidentiary determinations, our review of the record establishes that the court erroneously excluded a significant amount of evidence Ambriz offered that was relevant to this case and properly before the court. We address these issues further in part III.A., *post*.

Ambriz received a letter from Attorney Kelegian's office instructing her to appear for trial. Ambriz went to court and waited for three hours, but Kelegian never arrived. Ambriz later learned that by this time, the court had already granted the defendants' summary judgment motion in the premises liability case, and the case had been dismissed.

## B. *Procedural background*

Ambriz filed suit against respondents alleging that their representation in the underlying premises liability action fell below the applicable standard of care. Ambriz filed the operative complaint, a second amended complaint, on November 29, 2004. After answering the complaint on December 30, 2004, respondents filed a motion for summary judgment, or in the alternative, summary adjudication.

Ambriz moved ex parte to strike the motion for summary judgment on the ground that it had not been served 75 days prior to the hearing date. The trial court denied Ambriz's motion and kept the original hearing date for the motion.

In support of her opposition to respondents' motion for summary judgment, Ambriz lodged 28 evidentiary exhibits and a number of declarations with the court. Respondents objected to nearly all of the evidence Ambriz offered.

After full briefing by the parties, on March 18, 2005, the trial court issued a tentative ruling on respondents' objections to Ambriz's evidence and issued a tentative order granting the motion for summary judgment. On that same day, the court heard arguments from the parties, and took the matter under submission so that it could review its evidentiary rulings prior to issuing a final order.

On March 22, the court issued a second order in which it amended portions of its tentative order and confirmed the remainder. The trial court revisited and changed some of its previous evidentiary rulings. However, the court reaffirmed the grant of summary judgment in favor of respondents. Respondents filed and served a "Notice of Entry of Order Granting Summary Judgment and of Judgment" on March 25. On April 25, respondents filed and served a judgment and a memorandum of costs. Four days later, respondents filed a second notice of entry of judgment.

Ambriz filed a timely notice of appeal.

III.

DISCUSSION

A. *The trial court erred in excluding certain evidence Ambriz submitted in opposition to respondents' summary judgment motion*

Before addressing whether the trial court properly granted summary judgment, we first resolve Ambriz's contention that the trial court should not have excluded many of the declarations and other exhibits Ambriz submitted in support of her opposition to the motion for summary judgment. As we discuss, the trial court erroneously sustained a number of respondents' objections to certain evidence Ambriz presented.

On appeal, Ambriz challenges the trial court's exclusion of all or part of 20 exhibits and five declarations. Although it appears that the trial court should not have excluded a number of these exhibits and declarations, for purposes of this appeal we limit our discussion to the evidence that was excluded but should have been considered, and that was sufficient to establish triable issues of fact as to the issue of causation in Ambriz's legal malpractice action.

1. *Portions of the deposition of Detective Dianna Lynn Pitcher*

Ambriz submitted a single page from the transcript of the deposition of Escondido Police Detective Dianna Lynn Pitcher in support of her opposition to respondents' motion for summary judgment. The excerpt included Pitcher's statement that police had found no evidence of forced entry during their investigation of the rape, and that the department had concluded that it was more likely than not that the rapist entered Ambriz's building through an open door.

Respondents made general objections to Ambriz's lodgment of the excerpt from the Pitcher deposition on the grounds that Ambriz failed to include a reporter's certificate demonstrating the authenticity of the deposition testimony, and that Ambriz's attorney failed to state that she had personal knowledge of the deposition excerpt, failed to lay a foundation for the deposition excerpt, failed to authenticate the deposition excerpt and failed to present any basis for contending that the excerpt was "what [it] purport[s] to be." Respondents also asserted that because Ambriz's attorney failed to declare that the deposition excerpt was true and correct and that she had personal knowledge of the deposition, the excerpt was inadmissible.

Respondents made more specific objections to the testimony included in the excerpt, claiming that the testimony constituted improper opinion, lacked foundation, called for speculation, and was irrelevant.

The trial court originally sustained all of respondents' objections to the excerpt from Pitcher's deposition "except as to the relevancy objection." After oral argument, the trial court overruled the objection that the excerpt was inadmissible due to the failure to include a reporter's certificate.

There are a number of reasons why the court should have overruled respondents' other objections to this evidence. First, the objections based on Ambriz's attorney's failure to attest to personal knowledge of the deposition excerpt, lay a foundation, or authenticate the excerpt are without merit. Respondents presented excerpts from the same deposition in support of their motion for summary judgment. (Cf. Evid. Code, § 1414 ["A writing may be authenticated by evidence that: [¶] (a) The party against whom it is offered has at any time admitted its authenticity; or [¶] (b) The writing has been acted upon as authentic by the party against whom it is offered"].) Respondents admitted the authenticity of the transcript of Detective Pitcher's deposition by seeking to use portions of that deposition in support of their motion for summary judgment. Raising an objection as to lack of authentication of an excerpt from the same deposition defendants themselves relied upon in their motion is disingenuous, unless defendants can establish that the excerpt Ambriz offered was not part of the deposition transcript. Respondents made no such allegation.[3] Further, Ambriz's attorney attested, under penalty of perjury, that the copies of the documents lodged constituted "true and correct copies of what they purport to be." This was sufficient to overcome respondents' generic objections to this evidence.

Additionally, Ambriz's attorney could have easily cured these perceived problems if given the opportunity to do so. At oral argument, Ambriz's attorney offered to do just that, but the court denied her request. The court's responses to Ambriz's counsel during oral argument on the tentative evidentiary rulings indicate that the court was growing impatient with counsel's attempt to address all of respondents' objections and did not want to spend

---

[3] "Authentication of a writing means (a) the introduction of evidence sufficient to sustain a finding that it is the writing that the proponent of the evidence claims it is or (b) the establishment of such facts by any other means provided by law." (Evid. Code, § 1400.) Ambriz's attorney included a copy of the first page of the deposition transcript. There was no reason for the court to be concerned that the transcript was not what Ambriz's attorney claimed it to be, i.e., a portion of the transcript of Pitcher's deposition.

more time on the evidentiary issues.[4] The court should have allowed Ambriz's counsel to attempt to remedy the perceived failings before ruling against Ambriz on a dispositive motion.

As to respondents' objections on the grounds of improper opinion, lack of foundation and speculation, at least some portion of the proffered deposition testimony did not constitute improper opinion, did not lack foundation, and did not call for speculation. Detective Pitcher stated, "we found . . . no evidence of a forced entry." This information does not constitute Detective Pitcher's opinion, nor is it speculation. Rather, it is a fact about which Pitcher, as a detective investigating the case, had personal knowledge. Further, respondents provided a foundation for Detective Pitcher's statements as to the findings of the police department in their own evidence in support of the summary judgment motion. Respondents and the court were clearly aware that Detective Pitcher had both personal knowledge and background information sufficient to make such a statement. The court should not have excluded this evidence.

### 2. Portions of the deposition of David Henry Mykytuik, a Casa Escondida security guard

Ambriz submitted a number of pages from the transcript of the deposition of David Henry Mykytuik, who was employed as an onsite security guard for Casa Escondida at the time of Ambriz's rape. The deposition excerpts included Mykytuik's observations as to a number of matters, including the age and other characteristics of the residents, the defective doors and locks, security matters at Casa Escondida, complaints he had received from residents, and complaints he had made to management.

Respondents objected to the proffered portions of the Mykytuik deposition on the same grounds as the Pitcher deposition. They also made specific objections to particular portions of the Mykytuik deposition.

---

[4] After Ambriz's attorney finished discussing respondents' 16th objection to Ambriz's documentary evidence (out of 21 sets of objections to this evidence), the court said, "We have been going for about 50 minutes. If you could please wrap up your portion of the argument." After telling Ambriz's attorney that she should have asked the court to take judicial notice of the notice of summary judgment in the underlying premises liability case, and Ambriz's attorney asked the court to take judicial notice of the documents in the underlying case, the court responded, "Not now. It's too late. You have to ask for it in your paperwork. You know that." A few minutes later, the court said, "All right. Are you finished?" When Ambriz's attorney responded that she was not finished, the court replied, "All right. It's been an hour. I'm asking you to finish up, please."

For the same reasons that the court should not have sustained the general objections to Ambriz's offer of an excerpt of the Pitcher deposition, the court should not have sustained the general objections to the excerpts of the Mykytuik deposition. Not only did respondents offer portions of the Mykytuik deposition in support of their motion for summary judgment, but they relied on the Mykytuik deposition extensively in their separate statement of undisputed material facts. There is simply no basis for respondents' general challenges to the introduction of other portions of the same deposition. The court abused its discretion in failing to consider the portions of the Mykytuik deposition that Ambriz offered.

Respondents separately objected to Mykytuik's statements that the residents at Casa Escondida were elderly and disabled, and predominately female, on the grounds of lack of foundation, speculation, improper opinion, and relevance. The court sustained only the relevance objection. However, evidence establishing that the residents of Casa Escondida are particularly vulnerable as a group because of their age and health is relevant to whether an attack on one of those residents was reasonably foreseeable. The evidence was relevant and should not have been excluded on this ground.

### 3. *City of Escondido Ordinance No. 83-70 and the declaration of restrictions imposed on the Casa Escondida property*

Ambriz offered a copy of Escondido City Ordinance No. 83-70, showing that senior housing projects in Escondido are required to provide "[i]nternal and/or perimeter security measures . . . as necessary to meet the special security needs of senior residents." She also offered a copy of the declaration of restrictions imposed on the Casa Escondida development and recorded by the City of Escondido, which shows that Casa Escondida was required to rent to persons aged 62 or older, and to set aside no less than 25 percent of its rental units for low or moderate income seniors.

Respondents objected to both documents on the grounds that Ambriz's attorney failed to state that she had personal knowledge of the documents, and failed to lay any foundation or provide a basis for her statement that the documents are "what they purport to be." Acknowledging that "someone from the City of Escondido apparently attempted to authenticate" these documents, respondents nevertheless challenged the documents on the basis of Ambriz's attorney's perceived failure to provide sufficient authentication and foundation.

■ The court sustained respondents' authentication objections to both documents. This was an abuse of discretion. Ambriz included on both documents a certification by Robert Zoronado, deputy clerk of the City of Escondido, attesting to the authenticity of the documents. There was thus a presumption that the documents were what they purported to be. (See Evid. Code, §§ 1530 [a purported copy of a writing in the custody of a public entity is prima facie evidence of existence and content of writing if it purports to be published by the authority of the public entity in which the writing is kept], 1531 [when a copy of a writing is attested or certified, the attestation or certificate must state in substance that the copy is a correct copy of the original or of a specified part thereof], 1532 [official record of a writing is prima facie evidence of the existence and content of the original recorded writing if the record is a record of an office of a public entity and a statute authorized the writing to be recorded in that office].) Respondents offered nothing to overcome the presumption that these copies of official records were true and correct copies, as certified by a city official.[5] There was thus no basis for excluding this evidence. The court should have considered it in determining respondents' motion for summary judgment.

### B. *The trial court improperly granted summary judgment in favor of respondents*

We review an appeal from the grant of a motion for summary judgment de novo, independently examining the record to determine whether triable issues of material fact exist and "considering all the evidence set forth in the moving and opposition papers except that to which objections were made and sustained." (*Johnson v. City of Loma Linda* (2000) 24 Cal.4th 61, 65–66 [99 Cal.Rptr.2d 316, 5 P.3d 874]; see also *Saelzler v. Advanced Group 400* (2001) 25 Cal.4th 763, 767 [107 Cal.Rptr.2d 617, 23 P.3d 1143] (*Saelzler*).) In conducting this independent review "we must view the evidence in a light favorable to plaintiff as the losing party [citation], liberally construing her evidentiary submission while strictly scrutinizing the defendants' own showing, and resolving any evidentiary doubts or ambiguities in plaintiff's favor." (*Id.* at p. 768.)

■ "In order to prevail in an action based upon a defendant's alleged negligence, a plaintiff must demonstrate that the defendant owed the plaintiff

---

[5] Respondents also challenged the fact that no seal of the City of Escondido was affixed to the certification, despite a statement by the city clerk that such a seal was affixed. The court did not rule on this issue because it sustained respondents' other objections to the evidence. However, the Evidence Code does not require a seal in order for the presumptions of authenticity to stand. Further, Ambriz's attorney stated that the seal had simply not reproduced well because it was an embossing. She offered to show the court the embossed seal as further proof. It is clear that this evidence was properly authenticated, despite the absence of an embossed seal.

a legal duty, that the defendant breached the duty, and that the breach was a proximate or legal cause of his or her injuries. [Citation.] 'We have recently observed that . . . amendments to Code of Civil Procedure section 437c . . . place the initial burden on the defendant moving for summary judgment and shift it to the plaintiff upon a showing that the plaintiff cannot establish one or more elements of the action.' [Citation.]" (*Morris v. De La Torre* (2005) 36 Cal.4th 260, 264–265 [30 Cal.Rptr.3d 173, 113 P.3d 1182].)

### 1. *Standards for establishing legal malpractice*

The trial court granted summary judgment in favor of respondents on Ambriz's legal malpractice and related claims. The elements of a legal malpractice cause of action are "(1) the duty of the attorney to use such skill, prudence, and diligence as members of his or her profession commonly possess and exercise; (2) a breach of that duty; (3) a proximate causal connection between the breach and the resulting injury; and (4) actual loss or damage resulting from the attorney's negligence. [Citations.]" (*Coscia v. McKenna & Cuneo* (2001) 25 Cal.4th 1194, 1199 [108 Cal.Rptr.2d 471, 25 P.3d 670].) In a legal malpractice claim, the method for proving the element of causation has been likened to a "trial within a trial" or a "case within a case." (See *Viner v. Sweet* (2003) 30 Cal.4th 1232, 1240, fn. 4 [135 Cal.Rptr.2d 629, 70 P.3d 1046] (*Viner*); see also *Mattco Forge, Inc. v. Arthur Young & Co.* (1997) 52 Cal.App.4th 820, 834 [60 Cal.Rptr.2d 780] [comparing standards of proof in accounting malpractice with those in legal malpractice].) "The case-within-a-case or trial-within-a-trial approach applied in legal malpractice cases [is] an objective approach to decide what *should have been the result* in the underlying proceeding or matter. [Citation.]" (*Church v. Jamison* (2006) 143 Cal.App.4th 1568, 1585 [50 Cal.Rptr.3d 166].)

### 2. *Causation in the legal malpractice case*

In moving for summary judgment in the trial court, respondents maintained that Ambriz could not establish the element of causation in her legal malpractice case. Specifically, respondents claimed that Ambriz could not show that their alleged breach caused the resulting injury, i.e., the dismissal of the underlying premises liability case on summary judgment. According to respondents, Ambriz would have been unable to prove the elements of duty and/or causation in the underlying premises liability action, and thus could not establish that any presumed breach of the standard of care by her attorneys in litigating the premises liability case was what caused her to lose the premises liability case on summary judgment.

" '[C]ausation . . . is ordinarily a question of fact which cannot be resolved by summary judgment. The issue of causation may be decided as a question

of law only if, under undisputed facts, there is no room for a reasonable difference of opinion. [Citation.]' [Citation.] 'The question about what would have happened had [the lawyer] acted otherwise is one of fact unless reasonable minds could not differ as to the legal effect of the evidence presented. [Citation.]' [Citation.]" (*Kurinij v. Hanna & Morton* (1997) 55 Cal.App.4th 853, 864 [64 Cal.Rptr.2d 324]; see also *Dawson v. Toledano* (2003) 109 Cal.App.4th 387, 396 [134 Cal.Rptr.2d 689] [instances in which breach of duty and proximate cause can be resolved as matters of law are rare].)

Using the "case within a case" method, the trial court concluded as a matter of law that Ambriz would have lost the underlying premises liability action even if her attorneys had provided adequate representation, because she could not have survived summary judgment on the causation element. Specifically, the court concluded that "there is no triable issue of fact whether it was more probable than not that additional security precautions would have prevented the subject attack."

### 3. The underlying premises liability action: a "case within a case"

An action in negligence requires a showing that the defendant owed the plaintiff a legal duty, that the defendant breached that duty, and that the breach was a proximate or legal cause of injuries suffered by the plaintiff. (See *Ann M. v. Pacific Plaza Shopping Center* (1993) 6 Cal.4th 666, 673 [25 Cal.Rptr.2d 137, 863 P.2d 207] (*Ann M.*).) In this case, respondents assert that Ambriz could not have established in the premises liability action that the management of Casa Escondida owed her a duty to take additional security measures, or that any breach of a presumed duty was the proximate cause of her injuries. Ambriz asserts that she offered sufficient evidence to raise triable issues of fact regarding the duty and the causation elements of her premises liability cause of action. We conclude that Ambriz presented sufficient evidence to create a triable issue of fact as to the issues of duty and causation in her premises liability case against Casa Escondida, and thus, that the trial court erred in determining as a matter of law that Ambriz could not have survived summary judgment in that action.

### a. Ambriz could have established that Casa Escondida management owed her a duty[6]

Respondents contend that Ambriz could not have established that Casa Escondida owed her a duty to better secure the property from intruders, and

---

[6] Although the trial court based its ruling on the conclusion that Ambriz could not, as a matter of law, have succeeded in the underlying premises liability case on the element of causation, both Ambriz and respondents address on appeal whether Ambriz could have

thus, that she would have lost on summary judgment for this reason, regardless of her attorneys' actions. We disagree.

■ The question whether a duty exists is to be resolved by the court, not a jury. (*Ann M., supra*, 6 Cal.4th at p. 674.) Courts have determined that an actor has no legal duty to avoid harm that is not foreseeable. (*Id.* at p. 678.) ■ "The duty of a proprietor of a business establishment to business invitees generally includes a 'duty to take affirmative action to control the wrongful acts of third persons [that] threaten invitees where the occupant has reasonable cause to anticipate such acts and the probability of injury resulting therefrom.' [Citation.]" (*Kentucky Fried Chicken of Cal., Inc. v. Superior Court* (1997) 14 Cal.4th 814, 819 [59 Cal.Rptr.2d 756, 927 P.2d 1260].)

"Out of the generic obligations owed by landowners to maintain property in a reasonably safe condition, the law of negligence in the landlord-tenant context has evolved to impose a duty of reasonable care on the owner of an apartment building to protect its tenants from foreseeable third party criminal assaults." (*Vasquez v. Residential Investments, Inc.* (2004) 118 Cal.App.4th 269, 279–280 [12 Cal.Rptr.3d 846].) With respect to a landowner's duty to provide invitees with protection from third party crime, "the scope of the duty is determined in part by balancing the foreseeability of the harm against the burden of the duty to be imposed. [Citation.] ' "[I]n cases where the burden of preventing future harm is great, a high degree of foreseeability may be required. [Citation.] On the other hand, in cases where there are strong policy reasons for preventing the harm, or the harm can be prevented by simple means, a lesser degree of foreseeability may be required." [Citation.]' [Citation.] . . . [D]uty in such circumstances is determined by a balancing of 'foreseeability' of the criminal acts against the 'burdensomeness, vagueness, and efficacy' of the proposed security measures. [Citation.]" (*Ann M., supra*, 6 Cal.4th at pp. 678–679; see also *Sharon P. v. Arman, Ltd.* (1999) 21 Cal.4th 1181, 1190 [91 Cal.Rptr.2d 35, 989 P.2d 121] (*Sharon P.*), disapproved in *Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826 [107 Cal.Rptr.2d 841, 24 P.3d 493] [applying balancing test to assertion that security guards should have been provided].)[7]

---

succeeded in establishing the existence of a duty owed to her by Casa Escondida. We consider and address the question of duty because respondents contend that even if we disagree with the trial court's conclusions regarding causation in the underlying premises liability case, we should affirm the trial court's grant of summary judgment on the basis that Ambriz could not have established that Casa Escondida owed her a duty to take additional security measures.

[7] Although the question whether a duty exists is generally expressed in terms of a broad proposition regarding the expectations placed upon one class of persons vis-à-vis another class of persons, the law of premises liability based upon third party *criminal* acts has evolved differently. In this area, both the plaintiff and the court must specifically define the parameters of the duty alleged to exist and to have been breached.

"In circumstances in which the burden of preventing future harm caused by third party criminal conduct is great or onerous (as when a plaintiff, such as in *Ann M.*, asserts the defendant had a legal duty to provide guards or undertake equally onerous measures, or as when a plaintiff, such as in *Sharon P.* or *Wiener [v. Southcoast Childcare Centers, Inc.* (2004) 32 Cal.4th 1138 [12 Cal.Rptr.3d 615, 88 P.3d 517]], asserts the defendant had a legal duty to provide bright lighting, activate and monitor security cameras, provide periodic 'walk-throughs' by existing personnel, or provide stronger fencing), heightened foreseeability—shown by prior similar criminal incidents or other indications of a reasonably foreseeable risk of violent criminal assaults in that location—will be required. By contrast, in cases in which harm can be prevented by simple means or by imposing merely minimal burdens, only 'regular' reasonable foreseeability as opposed to heightened foreseeability is required." (*Delgado v. Trax Bar & Grill* (2005) 36 Cal.4th 224, 243, fn. 24 [30 Cal.Rptr.3d 145, 113 P.3d 1159] (*Delgado*).)

Ambriz asserted in her opposition to the summary judgment motion that Casa Escondida management should have taken a number of measures that could have prevented the harm she suffered as a result of third party criminal conduct. Among the various measures Ambriz raised was a duty to properly maintain the locks on the doors and gates intended to limit access to the Casa Escondida buildings. In the trial court, Ambriz presented evidence that a number of access points were either purposefully left open, allowing the general public unfettered access to Casa Escondida grounds, or that they did not function properly, such that the doors to the buildings failed to close completely and/or lock after use.

Requiring a landlord to maintain doors and locks in good working order places a minimal burden on the landlord, particularly considering the fact that the landlord originally installed the locks and gates, presumably to maintain controlled and limited access to the property. Because requiring a landlord to use, maintain and/or repair already existing doors and locks imposes only a minimal burden on the landlord, the degree of foreseeability required in this case need not be as great as that required in *Sharon P.* or *Ann M.* We conclude that Ambriz needed to show only " 'regular' reasonable foreseeability" to establish the existence of such minimal duties. (*Delgado, supra*, 36 Cal.4th at p. 243, fn. 24.) The record establishes that Ambriz could easily have met this burden.

There was evidence that a number of vagrants had been congregating just outside the Casa Escondida complex and that they were making their way onto the complex grounds on a regular basis. Some were seen showering in the poolside showers. Ambriz saw them sleeping on benches at various locations on the property.

There was also evidence that male intruders had gained unauthorized access into the Casa Escondida buildings. The transient who attacked Ambriz had been seen inside her building on more than 10 occasions prior to the rape. He had become more aggressive in his panhandling of the residents at Casa Escondida in the weeks leading up to the attack. Ambriz and a couple of her neighbors had complained to the management that this transient "scared" them, and that the doors were not locking. The residents asked whether something could be done "about the doors and the man" and were assured by Casa Escondida management that they would "take care of it."

Under these circumstances, the management of Casa Escondida could foresee that a resident in Casa Escondida's vulnerable population might fall victim to an assault by an unauthorized intruder. Casa Escondida had previously installed locks in order to maintain the complex as a "controlled access" residential facility,[8] evidencing a concern on the part of Casa Escondida management regarding the residents' safety, and they were on notice that their security had been repeatedly breached. In view of the repeated security breaches and the known presence of unauthorized male intruders, a violent attack by an intruder was sufficiently foreseeable that Casa Escondida management had a minimal duty to properly maintain the locks on the doors and gates to the complex and its buildings.

Further, as noted above, Casa Escondida was granted a density variance on the condition that the complex be maintained as a low-to-moderate income senior housing project. As part of its agreement to rent primarily to poor, elderly and/or disabled tenants, Casa Escondida was required to meet certain safety standards set forth by the Escondido City Council, which included that "[i]nternal and/or perimeter security measures . . . be provided as necessary to meet the special needs of senior residents." Casa Escondida thus knew that it was required to take certain security measures to protect its residents, and that its residents were in need of special protection. The recognition by Escondido City Council that senior citizens are a particularly vulnerable group and Casa Escondida's implicit acknowledgement of this, constitutes additional evidence that the harm Ambriz suffered was reasonably foreseeable.

b. *Ambriz established a triable issue of fact regarding causation*

■ To demonstrate causation, a "plaintiff must show that the defendant's act or omission was a 'substantial factor' in bringing about the injury." (*Saelzler, supra*, 25 Cal.4th at p. 774.) " '[T]he actor's negligent conduct is not a substantial factor in bringing about harm . . . if the harm would have

---

[8] Ambriz declared that she had been told that the property was a "secured community." She also had seen advertisements indicating that Casa Escondida "had 'controlled access.' "

been sustained even if the actor had not been negligent.' " (*Viner, supra,* 30 Cal.4th at p. 1240, italics omitted.)

█ Ambriz offered circumstantial evidence as to how the rapist gained entry to the building. "[I]n a given case, direct *or circumstantial* evidence may show the assailant took advantage of the defendant's lapse (such as a failure to keep a security gate in repair) in the course of committing his attack, and that the omission was a substantial factor in causing the injury." (*Saelzler, supra,* 25 Cal.4th at p. 779, italics added.) Where a plaintiff seeks to prove an essential element of her case by circumstantial evidence, "she must show that the inferences favorable to her are more reasonable or probable than those against her. [Citations.]" (*Leslie G. v. Perry & Associates* (1996) 43 Cal.App.4th 472, 483 [50 Cal.Rptr.2d 785] (*Leslie G.*), italics omitted.)

The inferences from the circumstantial evidence in this case that are favorable to Ambriz are more reasonable than those against her. There was evidence that a number of entry doors to the buildings were not closing properly and were not locking. A security guard at the complex testified that during the time he worked at Casa Escondida, three of the four building entrances would not close and lock in the manner they were supposed to. Tenants had complained to the security guard that the doors would not close and lock behind them. The security guard was concerned about the fact that the entry doors were not in working order, believing that created an unsafe condition. He complained about the malfunctioning doors to management. Despite all of these complaints, the doors were not repaired prior to Ambriz's rape.

There was also evidence of numerous instances in which the rapist and other male "intruders" gained access to the inside of Ambriz's building prior to the rape. In addition, a police detective testified that there was no evidence of forced entry into the building at the time of the rape. A reasonable inference from this evidence is that it was more likely than not that the rapist gained entry through a door that failed to properly shut and/or lock.

Respondents suggest that the assailant might have entered Ambriz's building in any number of ways, including by being offered entry to the complex by a tenant, entering through a door that had been propped open by another resident, entering through a ground floor patio sliding-glass door or unlocked window, or entering through a second floor balcony door or window. However, considering the lack of evidence supporting any of these other methods of entry, it is more likely that the assailant entered through a door that failed

to lock than by any of these alternative methods.[9] Although it is true that a plaintiff "cannot survive summary judgment simply because it is possible that [an assailant] might have entered through the broken [door]" (*Leslie G., supra,* 43 Cal.App.4th at p. 483, italics omitted), here there is evidence, not merely speculation, that it was more probable than not that the rapist gained entry through an improperly maintained door rather than by any of the alternative methods respondents suggest.

The circumstances of this case are distinguishable from the circumstances in other cases in which courts have decided the issue of causation in favor of the defendants. In *Leslie G., supra,* 43 Cal.App.4th at page 488, the plaintiff theorized that the landlord's failure to repair a broken security gate was the legal cause of an assault and rape. However, in that case, there was no evidence that the assailant had entered through the broken gate, or that the gate was the only means of entry into the garage of the apartment building, where the assault took place. The plaintiff had no other evidence to show that it was more probable than not that the assailant had gained entry through the broken gate. The court concluded that summary judgment was appropriate because it was pure speculation to assume that the broken gate was a substantial factor in causing the injury. (*Ibid.*)

The Supreme Court approved *Leslie G.* and applied its reasoning and the reasoning in similar decisions, in *Saelzler, supra,* 25 Cal.4th 763. In *Saelzler,* the plaintiff, a Federal Express employee who was assaulted while attempting to deliver a package at the defendants' apartment complex, alleged that better security measures would have prevented the assault. Citing *Leslie G.,* the Supreme Court emphasized that proof of causation cannot be based upon speculation and conjecture, and that evidence establishing a mere possibility of causation is insufficient to survive summary judgment. (25 Cal.4th at pp. 775–776.) Rather, in order to establish causation, a plaintiff must demonstrate some substantial link or nexus between the alleged omission and the plaintiff's injury. (*Id.* at p. 778.) In the absence of other proof of causation, an expert's opinion that better security measures would have prevented the assault is nothing more than speculation and conjecture, and is thus insufficient to withstand summary judgment. (*Id.* at p. 777.)

The plaintiff in *Saelzler* admitted that she did not know the identity or background of her attackers. (*Saelzler, supra,* 25 Cal.4th at p. 776.) It was

---

[9] The security guard testified that the residents were "very safety conscious," yet no one reported a trespasser on the premises. There were no indications that a door "had been broken into." He further testified that around the time of the rape, no residents had reported broken windows, unauthorized entry by someone into an apartment through an open or unlocked door or window, items missing from an apartment, or that anyone unauthorized had been in an apartment in the night.

thus possible that the attackers were tenants of the apartment complex who were authorized to enter the locked security gates and to be on the premises. (*Ibid.*) The court concluded, "That being so, and despite the speculative opinion of plaintiff's expert, [the plaintiff] cannot show that defendants' failure to provide increased daytime security at each entrance gate or functioning locked gates was a substantial factor in causing her injuries. [Citations.] Put another way, she is unable to prove it was 'more probable than not' that additional security precautions would have prevented the attack. [Citations.]" (*Ibid.*)

In this case, Ambriz and Casa Escondida management *did* know the identity of Ambriz's attacker, and Ambriz had seen this same individual inside her building at Casa Escondida on more than 10 occasions prior to the attack. The assailant was a transient who did not live at Casa Escondida. We can infer that his entry was thus unauthorized. Based on the evidence Ambriz offered, we can also infer that the malfunctioning doors had allowed a number of people to gain unauthorized entry into the complex. The *Saelzler* court noted that this type of evidence is useful for inferring how an attacker likely gained access: "Eyewitnesses, security cameras, even fingerprints *or recent signs of break-in or unauthorized entry,* may show what likely transpired at the scene," adding, "In the present case no such evidence was presented, but the circumstances in other cases may well be different." (*Saelzler, supra,* 25 Cal.4th at p. 779, italics added; see also *Vasquez, supra,* 118 Cal.App.4th at pp. 288–289.)

In view of the evidence of repeated unauthorized entries to the premises by male intruders and the police detectives' determination that there was no evidence of forced entry at the time Ambriz was attacked, it is reasonable to conclude that it is more likely than not that Ambriz's attacker used the same method of entry on the day of the rape that he and others had been using over an extended period of time to gain entry to Casa Escondida, i.e., entry through the malfunctioning doors at Casa Escondida.

Ambriz has raised a triable issue of fact as to whether Casa Escondida's failure to properly maintain its doors and locks was a substantial factor in causing her injury. The trial court thus erred in determining as a matter of law that Ambriz would not have been able to establish the element of causation in the underlying premises liability action and in granting summary judgment in favor of respondents in the legal malpractice action on that basis.

## IV.

## DISPOSITION

The judgment of the trial court is reversed. Costs are awarded to appellant.

McConnell, P. J., and Huffman, J., concurred.

A petition for a rehearing was denied February 15, 2007, and the opinion was modified to read as printed above. Respondents' petition for review by the Supreme Court was denied April 18, 2007, S150770. George, C. J., did not participate therein.