Filed 3/18/26; Modified and Certified for Pub. 4/14/26 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| JESSIE WALTON,<br><br>　　Plaintiff and Appellant,<br><br>　　　v.<br><br>VICTOR VALLEY COMMUNITY COLLEGE DISTRICT,<br><br>　　Defendant and Respondent. | G064668<br><br>(Super. Ct. No. CIVDS1918720)<br><br>O P I N I O N |

Appeal from a judgment of the Superior Court of San Bernardino County, Jeffrey R. Erickson, Judge. Reversed and remanded.

McNicholas & McNicholas, Matthew S. McNicholas and Douglas D. Winter; Law Offices of John W. Dalton and John W. Dalton; and Esner, Chang, Boyer & Murphy and Stuart B. Esner for Plaintiff and Appellant.

Walsh & Associates and Dennis J. Walsh; Pollak, Vida & Barer and Daniel P. Barer for Defendant and Respondent.

Plaintiff Jessie Walton appeals from summary judgment on her sexual harassment-related claims against defendant Victor Valley Community College District. We agree with Walton that the trial court wrongly excluded her attorney's declaration for a correctible omission. The court also erred in finding: (a) Walton lacks standing to pursue Fair Employment and Housing Act claims, (b) she failed to comply with the Government Claims Act, and (c) the District cannot be liable under Education Code section 66270 because it was not deliberately indifferent to Walton's complaints.

But Walton does not dispute the trial court's ruling on her claim for Civil Code violations. We thus reverse for the court to summarily adjudicate that one cause of action but otherwise deny the motion.

FACTS

Walton enrolled at the District as a postsecondary nursing student in 2017. As part of her coursework, she was required to complete clinical rotations at two local hospitals, where District faculty supervised her work with patients.

Walton's supervisor during her spring 2018 clinical rotations was Diego Garcia, the District's nursing program director. According to Walton, Garcia subjected her to extensive verbal and physical sexual harassment during those rotations and tried to force her into a sexual relationship in exchange for better grades. When Walton rebuffed his advances, he allegedly retaliated against her by giving her a non-passing grade and by refusing to meet with her to discuss it.

In June 2018, Walton sent a letter to the District detailing Garcia's harassment and discrimination. The District put Garcia on

2

administrative leave and commissioned a third party firm to investigate Walton's complaint.

Meanwhile, Walton sent the District a letter requesting a grade change, asserting Garcia had not taken her grading concerns seriously. The District denied her request in August 2018, finding no discrepancy. The following month, Walton withdrew from the program. She later obtained her nursing degree at a different program out of state.

In November 2018, after conducting numerous interviews of both students and faculty, the District's third-party investigator issued a 79-page report finding Garcia had engaged in "highly inappropriate behavior" by sexually harassing Walton and another female student. Following that investigation, District human resources recommended that Garcia be removed from his tenured position.[1] Garcia did not return to teach at the District.

Walton hired an attorney, who in December 2018 sent the District a 13-page letter detailing Garcia's alleged misconduct, outlining Walton's estimated damages, and advising that Walton might pursue litigation. The letter requested a response within 14 days and was labeled "PRIVILEGED AND CONFIDENTIAL" (underscore and boldface omitted) under Evidence Code section 1152. It did not reference the Government Claims Act.

After unsuccessful mediation attempts, Walton filed a complaint against the District and Garcia. Her operative first amended complaint

---

[1] Human resources noted Garcia had "touch[ed] female students, ask[ed] about their romantic/sexual relationships, ask[ed] them to go out for drinks, show[ed] gender-specific favoritism, [and] access[ed] sexually suggestive images at work," and his "conduct was pervasive, so as to create a hostile environment for" Walton and others.

asserts five claims under FEHA for sex discrimination, sexual harassment, failure to prevent, retaliation, and injunctive relief. It also includes one cause of action for violations of Civil Code sections 51, 51.5, 51.9, and 52; one cause of action for violations of Education Code sections 220, 221.8, 231.5, and 66270; and a cause of action for negligence.

The District moved for summary judgment or, alternatively, summary adjudication. It asserted, among other things, that Walton lacked standing to bring a claim under FEHA, failed to comply with the Government Claims Act notice requirements, and could not show the District was deliberately indifferent toward her complaints under Education Code section 66270.

Walton opposed the motion and submitted declarations from herself and her attorney. Counsel's declaration authenticated much of Walton's opposition evidence, including counsel's December 2018 letter to the District, as well as excerpts of various deposition transcripts offered to show the District knew Garcia had sexually harassed other students. The declaration contained the signature line typically used in pleadings and motions, with the date, the law firm name, and counsel's name and signature. The District objected to the declaration because it failed to state the location where it was signed and was not subscribed under penalty of perjury under the laws of California. (Code Civ. Proc., § 2015.5.)

At the hearing, the trial court began by telling Walton's counsel, "your declaration is not under penalty of perjury, sir." Counsel replied that he thought it was, but if not, that was "an oversight on my part." Noting the declaration was not under oath, the court sustained the District's objection to the declaration. After further argument on the motion's merits, the court

4

granted summary judgment as to Walton's non-FEHA claims and took the remainder of the motion under submission.

Later that same day, Walton's counsel filed a notice of errata concerning his declaration, apologizing to the trial court and defense counsel for his mistake. He also filed a corrected declaration, which was signed under penalty of perjury and included the place of execution. The District objected to the notice of errata as untimely.

That same afternoon, the trial court issued a minute order granting the District's motion. The court sustained the District's objection to Walton's counsel's original declaration (making no mention of the corrected declaration) and found the District's remaining evidentiary objections to counsel's declaration were moot. As for the merits, the court found Walton lacked standing to pursue FEHA claims, she failed to give Government Claims Act notice for her non-FEHA claims, and the District was not deliberately indifferent to Walton's complaints.[2] The court then entered judgment for the District and against Walton.

DISCUSSION

I.

THE TRIAL COURT SHOULD HAVE CONSIDERED COUNSEL'S DECLARATION

We begin with the trial court's evidentiary rulings, which we review for abuse of discretion. (*Doe v. Software One, Inc.* (2022) 85

[2] The trial court's order listed several other grounds for granting summary judgment: the other Education Code sections mentioned in Walton's seventh cause of action—Education Code sections 220, 221.8, and 231.5—cover elementary and secondary schools, not postsecondary schools; and no cause of action lies against the District, as a public entity, under Civil Code sections 51 or 51.9 so as to support Walton's sixth cause of action. Walton does not challenge those portions of the court's ruling, so we do not discuss them further.

Cal.App.5th 98, 104.) We reverse an evidentiary ruling only "if the trial court exercised its discretion in an arbitrary, capricious, or patently absurd manner" or if the evidentiary ruling was "based on a misunderstanding of the law." (*Hernandez v. Amcord, Inc.* (2013) 215 Cal.App.4th 659, 678.)

A court should be cautious about granting summary judgment "based on a curable procedural default, which deprives the opposing party of a decision on the merits." (*Parkview Villas Assn., Inc. v. State Farm Fire & Casualty Co.* (2005) 133 Cal.App.4th 1197, 1211 (*Parkview*).) In the event of such a defect, the "proper response" is to grant an opportunity to cure so the motion can be resolved on the merits. (*Ibid.*; but see *id.* at p. 1216 [court retains discretion to order "limited sanctions" against party responsible for procedural error].)

Technical oversights in declarations of counsel are just such curable defects. (See *Gall v. Smith & Nephew, Inc.* (2021) 71 Cal.App.5th 117, 125 [court permissibly allowed counsel to correct error in Code Civ. Proc. § 2015.5 subscription]; *Ambriz v. Kelegian* (2007) 146 Cal.App.4th 1519, 1528 (*Ambriz*) [reversing summary judgment—"the court should have allowed [plaintiff's] counsel to attempt to remedy the perceived failings [in his declaration] before ruling against [plaintiff] on a dispositive motion"].)

We can see no reason for preventing Walton's counsel from adding the necessary subscription to his declaration. Attorneys routinely submit declarations attaching deposition transcript excerpts and court records. (See *Ambriz, supra,* 146 Cal.App.4th at p. 1527.) Counsel was present in the courtroom and could have corrected the error during the hearing. Counsel did cure the defect hours later by filing a corrected declaration. Refusing to permit a cure hamstrung Walton's ability to oppose a dispositive motion, as the declaration authenticated much of her opposition

6

evidence. And the District has not explained how it would have been prejudiced if the trial court had accepted the cure.

Given these circumstances, sustaining the objection to counsel's declaration was an abuse of discretion. (See *Parkview, supra,* 133 Cal.App.4th at p. 1211; *Ambriz, supra,* 146 Cal.App.4th at pp. 1527–1528.)

Because the trial court did not rule on the District's additional objections to counsel's declaration, we presume the court overruled them. (*Taylor v. Financial Casualty & Surety, Inc.* (2021) 67 Cal.App.5th 966, 980.) "On appeal, the burden is on the objecting party to renew any relevant objections by arguing the issue with relevant authority and legal analysis." (*Ibid.*) As the District has not done so, it forfeits any error and we will consider the exhibits authenticated in counsel's declaration.

## II.

### SUMMARY JUDGMENT WAS NOT APPROPRIATE

That brings us to the merits of the District's motion and the issues of (a) standing, (b) notice, and (c) deliberate indifference—as well as (d) the effect of *Thomas v. Regents of University of California* (2023) 97 Cal.App.5th 587 (*Thomas*), a case the trial court did not discuss.

"'On review of an order granting or denying summary judgment, we examine the facts presented to the trial court and determine their effect as a matter of law.' [Citation.] We review the entire record, 'considering all the evidence set forth in the moving and opposition papers except that to which objections have been made and sustained.' . . . [¶] Summary judgment is appropriate only 'where no triable issue of material fact exists and the moving party is entitled to judgment as a matter of law.'" (*Regents of University of California v. Superior Court* (2018) 4 Cal.5th 607, 618.)

7

*A. Standing Under FEHA*

We first consider the trial court's conclusion that Walton lacked standing under FEHA because she is not an unpaid intern.

The Legislature amended FEHA in 2015 to extend its protections against sexual harassment and discrimination to "unpaid intern[s]." (Stats. 2014, ch. 302, § 1, eff. Jan. 1, 2015; see *Hirst v. City of Oceanside* (2015) 236 Cal.App.4th 774, 791 [discussing legislative history].) As a result, FEHA now makes it unlawful "[f]or any person to discriminate against any person in the . . . training, or other terms or treatment of that person in . . . an unpaid internship . . . because of the . . . sex [or] gender . . . of the person discriminated against." (Gov. Code, § 12940, subd. (c).) It further makes it unlawful "[f]or an employer . . . or any other person, because of . . . sex [or] gender . . . , to harass . . . an unpaid intern." (*Id.*, subd. (j)(1).)

The District argued Walton was not an unpaid intern under FEHA because she was a student and her clinical rotations were a required component of the nursing program. The trial court agreed and found Walton lacks standing under FEHA because she was not an employee or unpaid intern for the District, but rather "was completing course work at the [h]ospital secondary to her educational requirements."

Our review of the law suggests "student" and "unpaid intern" are not mutually exclusive. To the contrary, the Legislature understands that many unpaid interns are also students. When expanding FEHA to protect unpaid interns, the Legislature explained that many "internships are part of a more formalized educational or vocational program," and "several professional graduate programs require or at least typically include some type of internship placement before completion, *including . . . nursing*." (Assem. Com. on Labor and Employment, Analysis of Assem. Bill No. 1443

(2013–2014 Reg. Sess.) as introduced Jan. 6, 2014, p. 5, italics added; see also Cal. Code Regs., tit. 2, § 11008(m) ["'unpaid intern'" for purposes of FEHA is "any individual (often a student or trainee) who works without pay for an employer or other covered entity, in any unpaid internship or another limited duration program to provide unpaid work experience"].)

Thus, a postsecondary nursing student like Walton doing a clinical rotation at a hospital qualifies as an "unpaid intern" under FEHA. Her student status does not deprive her of FEHA protection.

The District suggests it cannot be liable for alleged FEHA violations because Walton volunteered at hospitals, not for the District. But the evidence suggests it was *District* staff, not hospital staff, who supervised Walton during her clinical rotations and controlled the details of her work. To the extent the District ran her internship (a fact Garcia appears to have conceded[3]), the District is subject to FEHA's provisions prohibiting the discrimination or harassment of unpaid interns. (See Gov. Code, § 12940, subd. (c) & (j)(1) [prohibiting discrimination and harassment of unpaid interns by "any person" and "any other person," not just by employers].) Granting summary judgment on the FEHA claims for lack of standing was therefore inappropriate.

B. *Government Claims Act Compliance*

We next consider the trial court's finding that Walton failed to give Government Claims Act notice for her non-FEHA claims. "The Act requires any person seeking monetary damages from a public entity to file a

---

[3] In his declaration in support of the District's motion, Garcia explained that the District "contracts with area hospitals and community health centers for nursing students to perform their clinical rotations. These healthcare facilities allow the District to conduct supervision/teaching of clinical practicums by District faculty on site."

9

claim with that entity. (§ 905.) The claim must include the information specified in section 910." (*A.S. v. Palmdale School Dist.* (2023) 94 Cal.App.5th 1091, 1096 (*A.S.*).) That information includes the claimant's name and address, the date and place of the events from which the claim arises, a general description of the damage or loss, and the names of any responsible public employees.[4] (Gov. Code, § 910.)

A claim is "'sufficient if (1) there is "*some* compliance with *all* of the statutory requirements"; and (2) the claim discloses sufficient information to enable the public entity adequately to investigate the merits of the claim so as to settle the claim, if appropriate.'" (*A.S., supra,* 94 Cal.App.5th at p. 1097.) "'[T]he claims statute "should not be applied to snare the unwary where [that] purpose has been satisfied."'" (*Plata v. City of San Jose* (2022) 74 Cal.App.5th 736, 748.)

Counsel's 13-page December 2018 letter to the District detailing Garcia's alleged misconduct and outlining Walton's estimated damages gave sufficient notice. It provided the District with the information needed to investigate Garcia's alleged misconduct. Although the District contends the letter "failed to contain the elements of a claim," it tellingly does not identify which element was omitted.

The District appears to assert that Walton did not intend for the December 2018 letter to serve as a claim, as it was labeled a confidential settlement communication and gave the District less than 45 days to respond. (See Gov. Code, § 911.6, subd. (a) [board must grant or deny claim within 45 days of presentation].) But our Supreme Court has found that a claimant's subjective intent in sending a letter does not matter when evaluating

---

[4] The letter also must include the amount of the claim if under $10,000. (Gov. Code, § 910, subd. (f).) The claim here exceeded that amount.

10

whether she provided notice; instead, the "relevant inquiry" is whether the letter disclosed a claim that, if unresolved, would result in litigation. (*Phillips v. Desert Hospital Dist.* (1989) 49 Cal.3d 699, 709–710.) Counsel's December 2018 letter did just that.

*C. Deliberate Indifference*

The trial court granted summary judgment on Walton's Education Code claim for the separate reason that the District "was not deliberately indifferent to [Walton's] claims of sexual discrimination, harassment, or retaliation by Garcia." We see triable issues here.

Similar to Title IX, Education Code section 66270 provides that "[n]o person shall be subjected to discrimination on the basis of . . . gender . . . in any program or activity conducted by any postsecondary educational institution that receives, or benefits from, state financial assistance or enrolls students who receive state student financial aid." To prevail under this provision, a plaintiff must prove the same elements as a Title IX claimant: "'(1) he or she suffered severe, pervasive and offensive harassment, that effectively deprived plaintiff of the right of equal access to educational benefits and opportunities; (2) the school district had actual knowledge of that harassment; and (3) the school district acted with *deliberate indifference* in the face of such knowledge.'" (*Videckis v. Pepperdine University* (C.D. Cal. 2015) 100 F.Supp.3d 927, 935, italics added; cf. *Donovan v. Poway Unified School Dist.* (2008) 167 Cal.App.4th 567, 579 (*Donovan*) [applying same elements to Ed. Code § 220 claim].)

Focusing on the third element, the trial court found the District "held an investigation," which definitively showed it was not deliberately indifferent to Walton's claims.

11

In our view, the bare fact the District conducted an investigation is not necessarily dispositive, particularly considering the order of events. The record shows Walton complained to the District about Garcia's alleged sexual harassment and grade retaliation in summer 2018, and the District promptly commenced an investigation. In the weeks and months that followed, however, the District refused to correct Walton's grade and forced her to repeat the semester, which ultimately prompted her to withdraw from the program altogether and pursue a different program out of state.

By the time the District's investigation was completed in late 2018, Walton had already left the program. Thus, the investigation conferred no benefit on Walton, aside from belatedly validating her complaints. A reasonable jury could potentially find "deliberate indifference" from these facts. (Accord, *Roe ex rel. Callahan v. Gustine Unified School Dist.* (E.D. Cal. 2009) 678 F.Supp.2d 1008, 1038 ["whether an institution acted with deliberate indifference under a particular set of circumstances is a question normally left to the jury"].)

What's more, having erroneously excluded the declaration by Walton's counsel, the trial court failed to consider deposition evidence indicating that the District had received previous reports about Garcia sexually harassing other nursing students. This evidence further confirms that a question of fact exists as to whether the District acted with deliberate indifference. (See *Donovan, supra,* 167 Cal.App.4th at pp. 614–615, fn.24 [trial court may consider harassment suffered by non-plaintiff to find liability for Ed. Code § 220 violation].)

D. *The* Thomas *Decision*

The District urges us to affirm summary judgment on Walton's negligence claim on a separate ground not addressed by the trial court. It

relies on *Thomas, supra,* 97 Cal.App.5th 587, which was decided after the District filed its motion but which the District discussed in its reply brief below. The District contends Walton's negligence claim fails because a college has no duty to protect its students from "nonphysical" sexual harassment. (See *id.* at pp. 627–628 [no duty to prevent soccer coach from psychologically and verbally abusing women players].)

*Thomas* is unhelpful here because Walton alleged unwanted physical touching. *Thomas* therefore does not prevent Walton from pursuing a negligence claim against the District. (See also *John R. v. Oakland Unified School Dist.* (1989) 48 Cal.3d 438, 453 [student may pursue school district for "its own direct negligence in hiring and supervising the teacher"]; *Roe v. Hesperia Unified School Dist.* (2022) 85 Cal.App.5th 13, 25 [school district may be liable for negligent hiring, retention, or supervision if district employee sexually abuses student].)

*E. Recap*

To summarize, the trial court erred in granting summary judgment on Walton's five FEHA claims for lack of standing. As an unpaid intern, Walton has standing to pursue FEHA claims.

The trial court erred in granting summary judgment on the seventh cause of action for violating the Education Code. Walton substantially complied with the Government Claims Act notice requirements. Though Walton concedes Education Code sections 220, 221.8, and 231.8 are inapplicable, Education Code section 66270 does potentially apply and a triable issue of fact exists as to whether the District was deliberately indifferent to her complaint.

The trial court erred in granting summary judgment on the negligence cause of action. Walton substantially complied with the Government Claims Act notice requirements; *Thomas* does not bar her claim.

Walton does not challenge the trial court's ruling as to her Civil Code claim. As the District alternatively moved for summary adjudication, it is entitled to summary adjudication on the sixth cause of action.

## DISPOSITION

The judgment is reversed, and the matter is remanded to the trial court with instructions to: (1) vacate its order granting summary judgment in favor of the District; (2) enter a new order granting summary adjudication for the District on Walton's sixth cause of action for Civil Code violations and denying summary adjudication on all remaining claims; and (3) set a trial setting conference or case management conference. Walton shall recover her costs on appeal. (Cal. Rules of Court, rule 8.278(a)(1).)


SCOTT, J.

WE CONCUR:


MOORE, ACTING P. J.


SANCHEZ, J.


14

Filed 4/14/26

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| JESSIE WALTON,<br><br>     Plaintiff and Appellant,<br><br>          v.<br><br>VICTOR VALLEY COMMUNITY COLLEGE DISTRICT,<br><br>     Defendant and Respondent. | G064668<br><br>(Super. Ct. No. CIVDS1918720)<br><br>ORDER DENYING REHEARING, MODIFYING OPINION, AND PUBLISHING OPINION AS MODIFIED |

Respondent's petition for rehearing is denied.

Pursuant to California Rules of Court, rule 8.264(c)(1), the opinion is hereby modified in the following respects:

(1) on page 2, at the end of the first full paragraph, we add the following sentence: "We publish the opinion to provide needed clarity on an unpaid intern's standing to pursue claims under FEHA, and further on the "deliberate indifference" element of a section 66270 claim."

(2) on page 5, the first five full sentences ("Later that same day, . . . [¶] . . . were moot.") are deleted and replaced with the following: "Later that afternoon, the trial court issued a minute order granting the District's

motion. The court sustained the District's objection to Walton's counsel's declaration and found the District's remaining evidentiary objections to counsel's declaration were moot."

(3) on page 5, the sentence that reads "The court then entered judgment for the District and against Walton." is deleted.

(4) on page 5, the following is added as a final paragraph before the DISCUSSION section begins: "Less than an hour later, Walton's counsel filed a notice of errata concerning his declaration, apologizing to the trial court and defense counsel for his mistake. He also filed a corrected declaration, which was signed under penalty of perjury and included the place of execution. The District objected to the notice of errata as untimely. The trial court later entered judgment for the District and against Walton."

Finally, our opinion meets the standards for publication set forth in California Rules of Court, rule 8.1105(c). The opinion, as modified, is therefore ordered published in the Official Reports.

SCOTT, J.

WE CONCUR:

MOORE, ACTING P. J.

SANCHEZ, J.

2