Filed 6/27/11

# IN THE SUPREME COURT OF CALIFORNIA

| | | |
|---|---|---|
| THE PEOPLE, | ) | |
| | ) | |
| Plaintiff and Respondent, | ) | |
| | ) | S180567 |
| v. | ) | |
| | ) | Ct.App. 4/3 G040808 |
| DANNY LEE SKILES, | ) | |
| | ) | Orange County |
| Defendant and Appellant. | ) | Super. Ct. No. 08HF0799 |
| _____ | ) | |

Are faxed copies of certified court records admissible to establish that a prior conviction qualifies as a serious or violent felony under the "Three Strikes" law?

In this case, the prosecutor presented certified copies of court records from the Circuit Court of Lauderdale County, Alabama to prove that defendant had suffered an out-of-state prior serious felony conviction. During the court trial on the prior conviction, it was determined that the proffered certified copies were incomplete and provided insufficient proof. The prosecutor sought to obtain more evidence over the lunch recess. After the recess, the prosecutor offered a single page of an indictment that she had obtained from the Alabama clerk's office by fax. Over defendant's objection on foundational grounds, the trial court admitted the faxed copy of the original certified document.

In upholding the trial court's ruling, the Court of Appeal determined that the faxed copy had been authenticated by its content and circumstantial evidence.

1

The court compared the content of the faxed document with the other undisputed original certified copies of court records in the Alabama case and concluded that the faxed indictment page was an authentic representation of the actual charges in the Alabama case.

Because there was sufficient evidence to sustain a finding that the faxed document was an accurate copy of an authentic court record from the Circuit Court of Lauderdale County, Alabama, we affirm the Court of Appeal judgment upholding the trial court's admission of the faxed copy of the certified court record.

## I.  FACTS AND PROCEDURAL HISTORY

On November 11, 2007, Saida Hudson and her fiancé returned to their motel room in Costa Mesa to find it had been burglarized.  Another guest at the motel had seen defendant in front of Hudson's room around the time of the burglary.  The police arrested defendant and found in his possession several items that had been taken from the room.  The police also found defendant's fingerprints on the motel room windows.

A jury convicted defendant of one count of residential burglary (Pen. Code, §§ 459, 460, subd. (a)) and one count of receiving stolen property (Pen. Code, § 496, subd. (a).)  The court held a trial to determine whether defendant had suffered a prior Alabama felony conviction that qualified as a serious felony conviction under the Three Strikes law.  (Pen. Code, §§ 667, subds. (d),(e)(1); 1170.12, subds. (b), (c)(1).)

At the court trial, the prosecutor introduced certified copies of court records in the Alabama case, consisting of a minute order, a plea agreement, a single page of an indictment, and the grand jury's true bill.  The clerk marked this packet of documents as People's exhibit No. 16.  In addition, the prosecutor introduced

2

certified copies of booking documents and fingerprints in the Alabama case, which were marked as People's exhibit No. 17. Together, these documents showed that, in 1995, the grand jury indicted defendant on charges of manslaughter (count 1), driving under the influence of alcohol (count 2), and vehicular homicide (count 3), and that defendant pleaded guilty to the manslaughter charge in exchange for a 10-year prison sentence and dismissal of the remaining charges. The single page of the indictment described the vehicular homicide charge, but did not describe the other two charges. None of the other documents included factual descriptions of those two charges. The trial court admitted the documents in exhibit Nos. 16 and 17 without objection.

The trial court noted that to prove the prior Alabama manslaughter conviction was a serious felony conviction, the prosecution was required to establish that, during its commission, defendant had personally inflicted great bodily injury on a person other than an accomplice.[1] (Pen. Code, §1192.7, subd. (c)(8).) In considering the admitted documents, the court observed that none of those documents contained a factual description of the manslaughter charge to which defendant pleaded guilty. In response, the prosecutor offered to provide more information.

During the noon recess, the prosecutor contacted a clerk of the court in Alabama. The clerk faxed a certified copy of the first page of defendant's Alabama indictment, which apparently had been missing from exhibit No. 16. The indictment page (marked as People's exhibit No. 18) alleged that defendant

---

[1] A "serious felony" includes voluntary manslaughter, but not involuntary manslaughter. (Pen. Code, § 1192.7, subd. (c)(1).) Because defendant's Alabama manslaughter conviction arose from his reckless operation of a motor vehicle, it was more akin to the involuntary form of that offense.

committed manslaughter by running a red light, driving his car into a vehicle being operated by the victim, and recklessly causing the victim's death. Defense counsel objected to exhibit No. 18 on "foundational grounds" because it was a "photocopy." Overruling the objection, the trial court admitted exhibit No. 18 and took the matter under submission.

At the sentencing hearing, the trial court found the evidence established that, in the commission of the prior Alabama manslaughter offense, defendant had personally inflicted great bodily injury on a person other than an accomplice and that his prior foreign conviction qualified as a strike offense in California. Accordingly, the court sentenced defendant as a second-strike offender and imposed a total prison term of nine years.

On appeal, defendant argued that the prosecution had not properly authenticated exhibit No. 18 because it was a copy of the original certified copy of the Alabama indictment. Defendant acknowledged that the copy contained a certification stamp and the signature of Alabama court clerk Missy Homan Hibbett, but questioned whether the certification was legitimate because the initials "DM" appeared next to Hibbett's signature. Because exhibit No. 18 was not properly authenticated, defendant asserted there was insufficient evidence to support the trial court's finding he personally inflicted great bodily injury on a person other than an accomplice in committing the Alabama offense.

In the published portion of its opinion, the Court of Appeal rejected defendant's claim. It held that, under Evidence Code section 1521, subdivision (a), a copy of a certified copy of an official record is admissible to prove the nature of a prior conviction, "unless there is a genuine dispute concerning its terms and justice requires exclusion of the copy, or admission of the copy would be unfair." Notwithstanding the initials on the copy, the Court of Appeal found that

4

there was no genuine question about the authenticity, contents, or material terms of exhibit No. 18.

Nevertheless, the Court of Appeal then proceeded to determine exhibit No. 18's authenticity by comparing it with the certified court records in exhibit No. 16, which were of unquestioned authenticity. It found exhibit No. 18 authentic because its contents were consistent with the documents in exhibit No. 16 and because it showed the same court, bore the same date, and was certified by the same clerk as exhibit No. 16. The Court of Appeal affirmed exhibit No. 18's admissibility and further held there was sufficient evidence to support the trial court's finding that defendant's conduct constituted a serious felony for purposes of the Three Strikes law.

We granted defendant's petition for review to decide whether the trial court properly admitted a faxed copy of an original certified copy of an official court record.

## II. DISCUSSION

Defendant claims the Court of Appeal incorrectly determined that exhibit No. 18 was admissible under the Secondary Evidence Rule in Evidence Code section 1521.[2] He argues that a copy of an official record must be certified under section 1530 and that a faxed copy is never admissible to prove its existence and content because it lacks an original certification, as required by section 1530. The Attorney General argues that such a faxed copy can be admissible as secondary evidence under section 1521 and that it was properly admitted here. As explained below, we reject defendant's per se rule of exclusion and agree with the Attorney General's position, but with certain qualifications.

---

**2** Unless otherwise indicated, all statutory references hereinafter are to the Evidence Code.

5

The principles of statutory construction are well established. "The fundamental purpose of statutory construction is to ascertain the intent of the lawmakers so as to effectuate the purpose of the law." (*People v. Pieters* (1991) 52 Cal.3d 894, 898.) In approaching this task, we "must first look at the plain and commonsense meaning of the statute because it is generally the most reliable indicator of legislative intent and purpose." (*People v. Cochran* (2002) 28 Cal.4th 396, 400.) "If there is no ambiguity or uncertainty in the language, the Legislature is presumed to have meant what it said, and we need not resort to legislative history to determine the statute's true meaning." (*Id*. at pp. 400-401.) "[W]e do not construe statutes in isolation, but rather read every statute 'with reference to the entire scheme of law of which it is part so that the whole may be harmonized and retain effectiveness.' [Citation.]" (*People v. Pieters, supra*, 52 Cal.3d at p. 899.)

Section 452.5, subdivision (b), states that: "An official record of conviction certified in accordance with subdivision (a) of Section 1530 is admissible pursuant to Section 1280 to prove the commission, attempted commission, or solicitation of a criminal offense, prior conviction, service of a prison term, or other act, condition, or event recorded by the record."

Section 1530, subdivision (a), provides, in pertinent part, that: "A purported copy of a writing in the custody of a public entity, or of an entry in such a writing, is prima facie evidence of the existence and content of such writing or entry if: (1) [¶] [t]he copy purports to be published by the authority of the . . . public entity therein in which the writing is kept; [¶] (2) [t]he office in which the writing is kept is within the United States . . . and the copy is *attested or certified as a correct copy* of the writing or entry by a public employee, or a deputy of a public employee, having the legal custody of the writing . . . ." (Italics added.) "[T]he attestation or certificate must state in substance that the copy is a correct copy of

6

the original . . . ." (§ 1531.) Section 1530 requires only certification by signature. (*Ambriz v. Kelegian* (2007) 146 Cal.App.4th 1519, 1530, fn. 5.)

Here, exhibit No. 18 is a faxed copy of an original copy of an indictment page that was apparently stamped and signed by an Alabama court clerk, who stated, "I certify that the above is a true and correct copy of the original on file in this office." This certificate comports with sections 1531 and 1453 (signature presumed genuine if it purports to be the signature, affixed in official capacity of public employee). Both the original and faxed copies qualify as "duplicates." (§ 260.)[3]

Defendant posits that the original copy would have been admissible under section 1530 because it contained an original certification affixed to the precise copy that the custodian was certifying as genuine, accurate, and complete. However, he argues that the faxed copy here contained a copied attestation, which no longer signified that the official had seen and was vouching for the authenticity of the faxed copy, as required by section 1530. An "attested" or "certified" copy is defined as a "duplicate of an original (usu. official) document, certified as an exact reproduction usu. by the officer responsible for issuing or keeping the original." (Black's Law Dict. (9th. ed. 2009) p. 385.) Because the public official did not examine and compare the faxed copy with the original, with a certificate of its correctness, we agree that the faxed copy did not meet the requirements of section 1530. However, it does not necessarily follow that faxed copies of certified court records are per se inadmissible.

---

[3] Section 260 states: "A 'duplicate' is a counterpart produced by the same impression as the original, or from the same matrix, or by means of photography, including enlargments and miniatures, or by mechanical or electronic rerecording, or by chemical reproduction, or by other equivalent technique which accurately reproduces the original."

7

Under section 1530's clear language, certification only establishes a presumption of authenticity and is not the sine qua non of admissibility of official writings.  The statute provides that if a copy of an official writing is properly certified, then the writing "is *prima facie evidence* of the existence and content of such writing or entry."  (§ 1530, subd. (a), italics added; see also Pen. Code, § 969b [certified official records constitute prima facie evidence of prior conviction].)  "Prima facie evidence" is defined as "[e]vidence that will establish a fact or sustain a judgment unless contradictory evidence is produced."  (Black's Law Dict., *supra*, pp. 638-639.)  With proper certification, the copy of the official writing is presumed to be authentic, unless the opponent presents evidence to overcome the presumption that it is a true and correct copy.  (*Ambriz v. Kelegian, supra*, 146 Cal.App.4th at p. 1530; see also *People v. Delgado* (2008) 43 Cal.4th 1059, 1066.)  Indeed, section 1530, subdivision (b), clarifies that "[t]he presumptions established by this section are presumptions affecting the burden of producing evidence."  Thus, under sections 1530 and 452.5, subdivision (b), a properly certified copy of an official court record is a self-authenticated document that is presumptively reliable, and standing alone may be sufficient to prove a prior felony conviction.

Since a certified copy of an official writing "is prima facie evidence of the existence and content of such writing or entry" under section 1530, we may infer that a noncertified copy, by itself, is not reliable enough to constitute such prima facie evidence.  However, nothing in section 1530 forbids authentication by another method.  Other evidence may establish that a faxed copy of a certified copy of an official writing is authentic and reliable.  When considered together, the evidence may suffice to prove a prior felony conviction.

The Attorney General claims that the Secondary Evidence Rule provides for another means of authentication.  We agree.

8

In 1998, the Legislature repealed the best evidence rule and enacted the Secondary Evidence Rule (§§ 1520-1523). (Stats. 1998, ch. 100, §§ 1, 2, p. 633.) Under the Secondary Evidence Rule, "[t]he content of a writing may be proved by *otherwise admissible* secondary evidence." (§ 1521, subd. (a), italics added.) The Secondary Evidence Rule does not "excuse[] compliance with Section 1401 (authentication)."**4** (§ 1521, subd. (c).) Thus, to be "otherwise admissible," secondary evidence must be authenticated.

"Authentication of a writing means (a) the introduction of evidence sufficient to sustain a finding that it is the writing that the proponent of the evidence claims it is or (b) the establishment of such facts by any other means provided by law." (§ 1400.) As stated above, certification of an official writing, under sections 1530 and 1531, establishes its reliability in the absence of evidence overcoming the presumption that it is a true and correct copy. Thus, the statutory certification process is a "means provided by law" establishing that the official writing is the writing that the proponent of the evidence claims it is. (§ 1400, subd. (b).)

Nevertheless, the proponent of the evidence may introduce other "evidence sufficient to sustain a finding [of authenticity]." (§ 1400, subd. (a).) The means of authenticating a writing are not limited to those specified in the Evidence Code. (§ 1410 ["[n]othing in this article shall be construed to limit the means by which a writing may be authenticated or proved"]; *People v. Gibson* (2001) 90 Cal.App.4th 371, 383.) For example, a writing can be authenticated by circumstantial evidence and by its contents. (*Ibid.; Young v. Sorenson* (1975) 47 Cal.App.3d 911, 915.)

---

**4**      Section 1401, subdivision (b), states that "Authentication of a writing is required before secondary evidence of its content may be received in evidence."

9

If the prosecution had presented only the faxed copy in exhibit No. 18, this would have been insufficient evidence of authenticity and would not have amounted to prima facie evidence of the existence and content of such writing. However, the prosecutor presented certified copies of other court records from the Circuit Court of Lauderdale County, Alabama, marked as exhibit No. 16. These certified copies of official documents consisted of a minute order, a plea agreement, another page of an indictment, and the grand jury's true bill.

The indictment page in exhibit No. 18 is similar to, and consistent with, the indictment page in exhibit No. 16, which is of unquestioned authenticity. The single page of the Alabama indictment in exhibit No. 18 sets forth and describes a manslaughter charge in count 1 and a driving under the influence of alcohol charge in count 2. The bottom left corner of exhibit No. 18 is numbered 51-157. The single page of the Alabama indictment in exhibit No. 16 sets forth and describes a vehicular homicide charge in count 3. The bottom left corner of the page is numbered 51-157A. Both pages of the indictment in exhibit Nos. 16 and 18, as well as the other court records in exhibit No. 16, show the same Alabama court and county, bear the same date, and are certified by the same court clerk. Thus, despite defendant's claim that the certification in exhibit No. 18 has an individual's initials that do not appear on the other certified court records in exhibit No. 16, the documents are substantially similar to, and consistent with each other. Also, from the contents of the indictment pages, it is reasonable to infer that the page in exhibit No. 18 preceded the page in exhibit No. 16.

Moreover, the indictment pages in exhibit Nos. 16 and 18 relate to the same counts listed in the grand jury's true bill, another document of unquestioned authenticity. The grand jury's true bill in exhibit No. 16 reflects that defendant was indicted for manslaughter in count 1, driving under the influence of alcohol in count 2, and vehicular homicide in count 3. Thus, the contents of the documents

10

in exhibit Nos. 16 and 18 support a determination that the document in exhibit No. 18 was an accurate representation of a court document in the same Alabama case and an authentic representation of counts 1 and 2 of the indictment.

Once the proponent of the evidence establishes its authenticity, section 1521 requires exclusion of secondary evidence only if the court determines: (1) "[a] genuine dispute exists concerning material terms of the writing and justice requires the exclusion" or (2) "[a]dmission of the secondary evidence would be unfair." (§ 1521, subd. (a)(1) & (2).) In construing section 1521, the Court of Appeal broadly stated that, "a *copy* of a certified copy of an official record is admissible [to prove the contents of the record], unless there is a genuine dispute concerning its terms and justice requires exclusion of the copy, or admission of the copy would be unfair. (Evid. Code, § 1521, subd. (a); *People v. Atkins* (1989) 210 Cal.App.3d 47, 53-55 [258 Cal.Rptr. 113].)" Although the Court of Appeal correctly determined exhibit No. 18's authenticity and admissibility by comparing it with the certified documents in exhibit No. 16, the court's broad proclamation improperly suggests that faxed copies of certified copies are admissible if the opponent of the proffered evidence does not raise an issue of authenticity. Instead, as noted above, the proponent of a faxed copy of an official writing has the burden of producing evidence of its authenticity. Because a noncertified copy of an official writing does not constitute prima facie evidence of the existence and content of such writing under section 1530, the proponent must present additional authenticating evidence.[5] Here, the prosecution presented such additional evidence.

---

[5] In *People v. Atkins* (1989) 210 Cal.App.3d 47, 53-55 (on which the Court of Appeal relied), the trial court admitted copies of prison records and a copy of a certification by the custodian of records that those prison record copies were from

*(footnote continued on next page)*

11

Defendant argues that at least three other states have bright-line rules establishing that copies of certified copies are always inadmissible and that California should adopt such a bright-line rule. (See, e.g., *State v. Stotts* (1985) 144 Ariz. 72, 85, 695 P.2d 1110, 1123; *Kelly v. State* (Ind. 1990) 561 N.E.2d 771, 774-775; *Commonwealth v. Deramo* (2002) 436 Mass. 40, 45-49, 762 N.E.2d 815, 819-822.) However, in these cases, the courts did not consider the admissibility of copies of certified copies under a rule similar to our Secondary Evidence Rule or did not consider their admissibility in a context similar to this case, where there was additional authenticating evidence. Thus, these cases are distinguishable.

Finally, defendant claims that admission of exhibit No. 18, containing a copy of a clerk's certification, violated his constitutional rights to confrontation and cross-examination. However, defendant only objected to exhibit No. 18 on "foundational grounds" because it was a "photocopy." Thus, he has forfeited the

---

*(footnote continued from previous page)*

prison files. The defendant had objected to admission of the copy of the certification on the ground that the best evidence rule (former § 1500) required an original certification. The Court of Appeal held that under former section 1511 (providing for the admission of duplicates as an exception to the best evidence rule), the copy of the certification was admissible unless a genuine question is raised as to the authenticity of the original or it would be unfair to admit the copy in lieu of the original. The Court of Appeal upheld admission of the copies of the certification and prison records because defendant failed to raise an issue of authenticity or unfairness at trial. (*People v. Atkins, supra*, 210 Cal.App.3d at pp. 53-55.) The Secondary Evidence Rule differs from the rule applied in *People v. Atkins* in that the Secondary Evidence Rule does not obviate the requirement for a writing to be authenticated before it is admitted into evidence. (§§ 1401, subds. (a) & (b), 1521, subd. (c).) We disapprove of *Atkins*, *supra*, 210 Cal.App.3d 47, to the extent it suggests that a copy of a certified copy of an official record is admissible without further authentication by the proponent of the evidence.

12

constitutional claim by failing to raise it at trial.  (*People v. Tafoya* (2007) 42 Cal.4th 147, 166.)

In sum, the trial court properly admitted the faxed copy in exhibit No. 18 because the prosecution introduced other "evidence sufficient to sustain a finding [of authenticity]."  (§ 1400, subd. (a).)

### III.  DISPOSITION

We affirm the judgment of the Court of Appeal.

**CHIN, J.**


WE CONCUR:

CANTIL-SAKAUYE, C.J.
KENNARD, J.
BAXTER, J.
WERDEGAR, J.
CORRIGAN, J.
ELIA, J.*

_____

* Associate Justice of the Court of Appeal, Sixth Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

*See next page for addresses and telephone numbers for counsel who argued in Supreme Court.*

**Name of Opinion** People v. Skiles

_____

**Unpublished Opinion**
**Original Appeal**
**Original Proceeding**
**Review Granted** XXX 180 Cal.App.4th 1363
**Rehearing Granted**

_____

**Opinion No.** S180567
**Date Filed:** June 27, 2011

_____

**Court:** Superior
**County:** Orange
**Judge:** Dan McNerney

_____

**Counsel:**

Victoria S. Cole, under appointment by the Supreme Court, and Susan L. Ferguson, under appointment by the Court of Appeal, for Defendant and Appellant.

Edmund G. Brown, Jr., and Kamala D. Harris, Attorneys General, Dane R. Gillette, Chief Assistant Attorney General, Gary W. Schons, Assistant Attorney General, Peter Quon, Jr., Steve Oetting and Stephanie H. Chow, Deputy Attorneys General, for Plaintiff and Respondent.

**Counsel who argued in Supreme Court (not intended for publication with opinion):**

Victoria S. Cole
2658 Del Mar Heights Rd. #350
Del Mar, CA  92014
(858) 947-8180

Stephanie H. Chow
Deputy Attorney General
110 West A Street, Suite 1100
San Diego, CA  92101
(619) 645-2077