Filed 6/27/14  P. v. Carter CA1/5

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| **THE PEOPLE,** | |
| **Plaintiff and Respondent,** | **A135833** |
| **v.** | **(Alameda County Super. Ct. No. C164410)** |
| **HAROLD CARTER,** | |
| **Defendant and Appellant.** | |

_____/

A jury convicted Harold Carter of first degree murder (Pen. Code, § 187, subd. (a))[1] and found true various sentencing enhancements (§§ 12022.53, subds. (b), (c), (d), (g), 12202.7, subd. (a)).  The trial court sentenced Carter to state prison.

Carter appeals.  He claims the court erred by ruling the prosecution could cross examine him using a "prejudicial photograph."  We affirm.

FACTUAL AND PROCEDURAL BACKGROUND

*Prosecution Evidence*

Webster Johnson and two of his friends — Ezell Holmes and Andrea Smith — spent an August 2009 morning smoking marijuana and drinking "[p]romethazine with codeine" cough syrup.  That afternoon, the three friends decided to go to the corner of 90th Avenue and Olive Street in Oakland to buy music.  Holmes drove.  Johnson sat in

---

[1]     Unless noted, all further statutory references are to the Penal Code.

the front passenger seat and Smith sat in the backseat behind Holmes. Holmes parked the car near Bookers Market, a convenience store.

Smith got out of Holmes's car and walked across the street to buy a CD. Johnson remained in the car. When Smith returned, Johnson asked her to buy another CD. Smith walked across the street and purchased another CD. As she was returning to Holmes's car, she noticed Carter walk up to the sidewalk on Johnson's side of the car. Carter "reach[ed] back, and got a gun and just shot" Johnson about eight or nine times.

Law enforcement officers found Johnson dead in the front passenger seat of Holmes's car with multiple gunshot wounds. Outside Holmes's car, an investigator found 11 .40 caliber shell casings, which appeared to have been fired from a semi-automatic pistol. Inside the car, the investigator found five expended .40 caliber bullets.

Roberto Tinoco and Amarrell Perry identified Carter as the shooter. Jermain Hackett, one of Johnson's friends, told police Carter bragged about having a .40 caliber gun a few days before the shooting; Hackett also told police he saw the gun. At trial, Tinoco testified he was "[p]ositive" Carter "was the one shooting outside Bookers" Market but Perry, Hackett, and Smith recanted their identifications to varying degrees. Surveillance video showed Carter in the parking lot of Booker's Market a few minutes before the murder.

*Carter's Request to Testify*

After the prosecution rested, defense counsel told the court Carter "wished to testify as a witness [on] his own behalf." In response, the prosecution requested permission to use an undated photograph of Carter when it cross-examined him. The photograph showed Carter and two other people in front of Bookers Market. Carter had a "gun in his waistband . . . [I]t appears that he is lifting a shirt to show that gun in his waistband."

Defense counsel objected that the picture was "more prejudicial than probative." Counsel noted there was no evidence of when the photograph was taken and argued Carter would be prejudiced by the "gang signs" displayed by other people in the photograph. The court indicated it would "allow [the photograph] to be used in the cross-

2

examination of the defendant . . . when he testifies." The court examined the photograph and determined it was relevant and authenticated. It also concluded the photograph was "damaging to the defendant . . . but it is not . . . the kind of evidence which uniquely tends to evoke emotional bias against the defendant as an individual" pursuant to Evidence Code section 352. Finally, the court determined the gestures made by the other people in the picture did not "add[ ] to the prejudice" under Evidence Code section 352. Defense counsel informed the court Carter would not testify. The court marked the exhibit for identification but did not admit it.

*Verdict and Sentencing*

The jury convicted Carter of the first degree murder of Johnson (§ 187, subd. (a)) and found true various sentencing enhancements (§§ 12022.53, subds. (b), (c), (d), (g), 12202.7, subd. (a)). The trial court sentenced Carter to 25 years to life in state prison for first degree murder (§ 187, subd. (a)), to run consecutively with a 25-year-to-life sentence on the enhancement for personally and intentionally discharging a firearm causing death (§ 12202.53, subd. (d)).

## DISCUSSION

Carter contends the court violated his constitutional right to testify in his own defense "when it erroneously ruled that the People could use a prejudicial photograph as substantive evidence of guilt when [the prosecutor] cross-examined him." Carter "has failed to preserve this claim of error. It is well established that the denial of a motion to exclude impeachment evidence is not reviewable on appeal if the defendant subsequently declines to testify. [Citations.]" (*People v. Ledesma* (2006) 39 Cal.4th 641, 731 (*Ledesma*), citing *Luce v. United States* (1984) 469 U.S. 38 (*Luce*) [denial of in limine motion to preclude impeachment of the defendant with a prior conviction is not reviewable on appeal if the defendant did not testify] and *People v. Collins* (1986) 42 Cal.3d 378, 383-388 [prospectively applying *Luce*]; see also *People v. Ayala* (2000) 23 Cal.4th 225, 274 (*Ayala*) [the defendant waived claim "that the trial court's ruling denied

3

him a constitutional right to present his defense" where he "chose not to present the testimony"].)[2]

*Ledesma* is instructive. There, the defendant "sought a ruling that, should [he] testify and state he was remorseful, the prosecutor would not be permitted to question him about the circumstances of the crimes or use defendant's prior testimony for impeachment. The court declined to make such a ruling, and defense counsel indicated that as a result he would not call defendant as a witness." (*Ledesma, supra,* 39 Cal.4th at p. 731.) On appeal, the defendant claimed "the trial court's ruling denied him his rights to effective assistance of counsel and to testify in his own defense under the Fifth, Sixth, and Fourteenth Amendments to the federal Constitution and . . . the California Constitution." (*Ibid.*)

Our high court concluded the defendant waived this argument because he did not testify at trial. (*Ledesma, supra,* 39 Cal.4th at p. 731.) Relying on *Luce,* the California Supreme Court explained: "First, in order to determine the admissibility of defendant's prior testimony, the court must balance its probative value against its prejudicial effect under Evidence Code section 352, an analysis that cannot be performed unless the record discloses the content of the defendant's testimony. [Citations.] Second, if the defendant does not testify, any possible harm from the trial court's ruling is wholly speculative. The ruling might change in response to the actual content of the defendant's testimony, or the prosecution might choose not to use the evidence at issue. [Citations.] Third, if the trial court erred in its ruling, the appellate court could not 'intelligently weigh the prejudicial affect of that error.' [Citations.]" (*Ledesma, supra,* 39 Cal.4th at pp. 731-732.)

---

[2]    Carter's claim fails for the additional reason he did not raise it in the trial court. "'The appellate court's review of the trial court's admission of evidence is [ ] limited to the stated ground for the objection. [Citation.]' [Citation.]" (See *People v. Abel* (2012) 53 Cal.4th 891, 924, quoting Evid. Code, § 353; *People v. Skiles* (2011) 51 Cal.4th 1178, 1189 [the defendant forfeited claim that admission of evidence violated his constitutional rights to confrontation and cross-examination "by failing to raise it at trial"].)

Like the defendant in *Ledesma*, Carter did not testify and, as a result, he has not preserved his claim for appellate review. As in *Ledesma*, the rationale for the *Luce* rule applies here. (See *Ayala*, *supra*, 23 Cal.4th at p. 273.) Carter attempts to distinguish *Luce* by arguing the photograph was not offered as impeachment evidence but rather as "substantive evidence" of his guilt. We disagree. The prosecution offered the photograph to impeach Carter if he denied being at the scene of the murder with a gun.

Carter's reliance on *People v. Brown* (1996) 42 Cal.App.4th 461 (*Brown*) and *People v. Jablonski* (2006) 37 Cal.4th 774 (*Jablonski*) does not alter our conclusion. In *Brown*, the appellate court determined the defendant's claim was cognizable on appeal notwithstanding his failure to testify at trial because the defendant argued the impeachment evidence was obtained in violation of his Sixth Amendment right to counsel. (*Brown, supra,* 42 Cal.App.4th at pp. 470-471.) In *Jablonski*, the California Supreme Court considered the merits of the defendant's claim even though he did not testify at trial because the impeachment evidence was obtained in violation of his *Miranda* rights. (*Jablonski*, *supra*, 37 Cal.4th at pp. 810, 812-813.) Here, the impeachment evidence — i.e., the photograph — was not obtained in violation of Carter's constitutional rights and, as a result, neither *Brown* nor *Jablonski* apply.

Carter also claims the photograph was not properly authenticated, that it was more prejudicial than probative under Evidence Code section 352, and that its admission prejudiced him. Even if we assume for the sake of argument Carter preserved these arguments for appellate review, we would reject them because it is not reasonably probable a different ruling would have affected the verdict. When a defendant claims the trial court committed an evidentiary error, "the applicable standard of prejudice is that for state law error, as set forth in *People v. Watson* (1956) 46 Cal.2d 818, 836 (error harmless if it does not appear reasonably probable verdict was affected)." (*People v. Cudjo* (1993) 6 Cal.4th 585, 611.) Here, several witnesses identified Carter as the shooter and Tinoco testified at trial he was "[p]ositive" Carter was the shooter. It is not reasonably probable the jury would have acquitted Carter had the court excluded the photograph and had Carter testified in his own defense.

5

DISPOSITION

The judgment is affirmed.

_____
Jones, P.J.

We concur:

_____
Needham, J.

_____
Bruiniers, J.