Filed 10/14/14  P. v. Perry CA2/6

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SIX

| | |
|---|---|
| THE PEOPLE,<br><br>   Plaintiff and Respondent,<br><br>v.<br><br>AHMAD PERRY,<br><br>   Defendant and Appellant. | 2d Crim. No. B252617<br>(Super. Ct. No. TA125812-01)<br>(Los Angeles County)<br><br>ORDER MODIFYING OPINION<br>[NO CHANGE IN JUDGMENT] |

THE COURT:

It is ordered that the opinion filed herein on September 29, 2014, be modified as follows:

On page 3, in the first sentence of the second full paragraph under the title "Instagram," the names "Alicia Valdez" and "Miguel Valdez" are changed to "Alicia Valadez" and "Miguel Valadez."

There is no change in the judgment.

Filed 9/29/14 (unmodified version)
**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>AHMAD PERRY,<br><br>    Defendant and Appellant. | 2d Crim. No. B252617<br>(Super. Ct. No. TA125812-01)<br>(Los Angeles County) |

Ahmad Perry appeals a judgment following conviction of first degree murder, with findings that he personally discharged a firearm causing death, and that he committed the criminal offense to benefit a criminal street gang. (Pen. Code, §§ 187, subd. (a), 189, 12022.53, subds. (b)-(d), 186.22, subd. (b)(1)(C).)[1] We affirm.

*FACTUAL AND PROCEDURAL HISTORY*

In the morning of August 20, 2012, Armando (Ulysses) Gongora walked his younger brother K. to school along Lanzit Avenue in South Los Angeles. Perry walked toward them, bumped Gongora, and asked, "Where you from?" Gongora replied, "Sur." Perry then "popped out" a firearm from his waistband and shot Gongora twice in the chest. Gongora collapsed and died from gunshot wounds to his heart and other vital organs. Frightened, K. hid behind a vehicle as Perry ran down the street.

---

[1] All further statutory references are to the Penal Code unless otherwise stated.

K. later described Perry as a tall, thin, dark-skinned African-American, wearing a white shirt with a red and white design in the middle, long gray shorts, and red shoes or shoes with red shoelaces.

Shortly after the shooting and several blocks away, Alicia Valadez and her adult son Miguel saw Perry running down 112th Street.  Perry wore a sleeveless white shirt with a red design, gray rolled-up pants, and shoes with a red color.  Perry's left hand was free but his right hand was tucked underneath his shirt near his waist.  Alicia took a photograph of Perry from behind.

K. later selected Perry's photograph from a police photographic lineup as "look[ing] like [the shooter] a little bit."  Seven months later, K. reviewed the photographic lineup and stated to a defense investigator that he did not recall why he selected Perry's photograph.

Perry was known to Los Angeles police officers as an admitted member of the criminal street gang, "Bounty Hunter Bloods."  Perry's moniker was "Midnight" and that word was tattooed on his back.  A police field identification card dated January 2, 2010, documented Perry's gang membership, moniker, physical characteristics (tall, lean build) and red shoes.

Gang enforcement police officer Manuel Moreno testified that the Bounty Hunter Bloods is a large African-American gang in South Los Angeles.  Gang members wear the color red, commit violent crimes, including murders, robberies, and rapes, and are "pretty good at their job."  The gang consists of 10 to 12 cliques, including the "Shawlots," a reference to a parking lot within the Nickerson Gardens housing project, and "Belhaven," a reference to Belhaven Street.

Moreno stated that in 2010 an Hispanic criminal street gang, the "Mid City Stoners," moved into the Bloods' neighborhood.  Members of each gang then committed crimes against the other gang.  In April 2012, a Mid City Stoners gang member shot admitted Bounty Hunter Bloods gang member DeJuan Becker ("Thugga") in the arm.

Moreno opined that Gongora's death benefited the Bounty Hunter Bloods because the crime was committed in part to retaliate for the shooting of Becker.

Following the shooting, Perry went to Clinton, Mississippi, to live with his former girlfriend. Courtney Mack, the sister of Perry's former girlfriend, testified at trial that Perry behaved "strange[ly]," used the cellular telephones of others rather than his own, and stated that he would not contact a local relative in Mississippi because the relative "might turn him in." Later, Perry admitted "point blank" that he shot "[s]ome Mexican," the victim's little brother witnessed the shooting, and a neighbor photographed him from behind.

## Instagram[2]

On August 30, 2012, Los Angeles Police Officer Owen Berger served a search warrant on the social media website Instagram, seeking information for the account "SL_Midnight112." In response, Berger obtained 119-pages of electronic documents, including photographs with captions and comments, and user information. The photographs included these photographs of Perry: Exhibit No. 22, posted August 18, 2012, contained the phrase, "shawlotfinest"; Exhibit No. 24, posted June 18, 2012, contained the caption, "Original Bounty Hunna"; Exhibit No. 25, posted May 15, 2012, included an image of gang member Becker and contained the caption, "Me and Thugga."

Police officers later showed witnesses K., Alicia Valdez, and Miguel Valdez another photograph of Perry from the Instagram account. Perry's facial features were obscured in the photograph, but the witnesses identified the clothing in the photograph as similar to that worn by Perry during the shooting.

## Conviction and Sentencing

The jury convicted Perry of first degree murder and found that he personally discharged a firearm causing death, and that he committed the criminal

---

[2] As explained at trial, Instagram is a web-based photograph and video-sharing platform through which users host and share user-generated content. It provides an application for mobile devices that allows users to upload photos, apply digital filters to those photos, and share them with others.

offense to benefit a criminal street gang. (§§ 187, subd. (a), 189, 12022.53, subds. (b)-(d), 186.22, subd. (b)(1)(C).) The trial court sentenced Perry to 50 years to life imprisonment, consisting of 25 years to life for the murder conviction and 25 years to life for the firearm enhancement. (§§ 190, 12022.53, subd. (d).) The court imposed a $280 restitution fine, a $280 parole revocation restitution fine (stayed), a $40 court security assessment, and a $30 criminal conviction assessment, and awarded Perry 289 days of actual presentence custody credit. (§§ 1202.4, subd. (b), 1202.45, 1465.8, subd. (a)(1); Gov. Code, § 70373.) It stayed sentence for the criminal street gang allegation and the section 12022.53, subdivisions (b) and (c) firearm enhancements.

Perry appeals and contends that the trial court erred by admitting evidence of Instagram user information and four photographs, over defense objection.

*DISCUSSION*

Perry argues that the trial court abused its discretion by admitting into evidence four Instagram photographs with redacted captions because the evidence was not properly authenticated, was hearsay, and was unduly prejudicial. (Evid. Code, §§ 1400, 1401, 1200, subd. (a), 352.)[3] In part, he asserts that the prosecutor did not present sufficient evidence that the photographs and captions were not fake, altered, or composite. (*People v. Beckley* (2010) 185 Cal.App.4th 509, 515-516 [insufficient evidence to authenticate photograph of defendant's girlfriend flashing a purported gang sign].)

Perry also claims that the Instagram evidence was testimonial hearsay that violated his Sixth Amendment right to confrontation because he had no opportunity to cross-examine the author of the postings.

*I.*

We review a trial court's ruling regarding the admissibility of evidence for an abuse of discretion. (*People v. Goldsmith* (2014) 59 Cal.4th 258, 266.) Thus, we will

---

[3] All further statutory references are to the Evidence Code.

4

affirm the evidentiary ruling unless the court acted in an arbitrary or unreasonable manner.  (*Ibid.*)

Section 1401, subdivision (a) requires that a writing be authenticated before it may be received into evidence.  A photograph is a writing as defined by section 250.  (*People v. Goldsmith*, *supra*, 59 Cal.4th 258, 266.)  To authenticate a writing, the proponent must establish that the writing is what "the proponent of the evidence claims it is."  (§ 1400, subd. (a).)  Thus, the proponent must present "sufficient evidence for a trier of fact to find that the writing is what it purports to be."  (*Goldsmith*, at p. 267 ["Essentially, what is necessary is a prima facie case"].)  Conflicting reasonable inferences regarding authenticity bear on the document's weight as evidence, not its admissibility.  (*Ibid.*)

A photograph is usually authenticated by showing that it is an accurate and fair representation of the scene depicted.  (*People v. Goldsmith*, *supra*, 59 Cal.4th 258, 267.)  It may be authenticated by the person taking the photograph, by a witness to the event, circumstantial evidence, content, location, or any other means provided by law.  (*Id.* at p. 268.)

The trial court did not abuse its discretion because the prosecutor presented a prima facie case of authenticity.  The photographs obviously depicted Perry, as the trial judge remarked:  "I mean, quite candidly, there is no doubt, whatsoever, in my mind, in looking at some of these photographs, that it's [Perry]."  The name of the Instagram account was Perry's moniker and the account was password protected.  Perry was an admitted member of the Bounty Hunter Bloods, as was Becker, and both men were well known to gang enforcement police officers.  The photographs were relevant to the identity of Gongora's killer (by his clothing) and to proof of Perry's gang membership.

In any event, any error concerning authentication is harmless pursuant to any standard of review.  Perry admitted committing the murder to his friend in Mississippi and his admissions were consistent with details of the killing.  K. identified Perry from a photographic lineup and Alicia Valadez took a photograph of Perry from the

5

back. Perry was also an admitted member of the Bounty Hunter Bloods and his moniker, tattoo, and red shoes were already known to police officers. Los Angeles Police Officer Jesse Pineda had obtained field identification information from Perry and Becker who were together on May 31, 2012, several months prior to Gongora's murder. Thus, any error is harmless.

## II.

Section 352 requires the trial court to weigh the probative value of evidence against the dangers of prejudice, confusion, and undue consumption of time. (*People v. Mehserle* (2012) 206 Cal.App.4th 1125, 1154.) The court may exclude the evidence if these dangers substantially outweigh the evidence's probative value. (*Ibid.*) We review the court's ruling for an abuse of discretion. (*People v. Homick* (2012) 55 Cal.4th 816, 865.)

The trial court did not abuse its discretion pursuant to section 352 because the probative value of the photographs and their captions outweighed any undue prejudice. The photographs were probative of the identity of the shooter and his gang membership. Moreover, cognizant of its duties pursuant to section 352, the court redacted portions of the captions to preclude any undue prejudice, i.e., "out blazin," and "Good morning, bitches." The court's ruling was not arbitrary or unreasonable. (*People v. Mehserle*, *supra*, 206 Cal.App.4th 1125, 1154 [standard of review].)

## III.

Perry has forfeited his confrontation clause claim because he did not specifically object on this basis in the trial court. (*People v. Skiles* (2011) 51 Cal.4th 1178, 1189 [failure to object on Sixth Amendment confrontation ground forfeits appellate claim].)

Forfeiture aside, the photographs are not testimonial statements and cannot constitute hearsay for that reason. (*People v. Goldsmith*, *supra*, 59 Cal.4th 258, 274-275 [traffic camera photographs and video do not constitute hearsay as statutorily defined]; *People v. Cooper* (2007) 148 Cal.App.4th 731, 746 [videotape evidence is not testimonial

6

and not hearsay].)  Application of this rule necessarily defeats Perry's confrontation clause argument.  (*Goldsmith*, at p. 275.)

The judgment is affirmed.

NOT TO BE PUBLISHED.


GILBERT, P.J.

We concur:


YEGAN, J.


PERREN, J.

7

Patrick Connolly, Judge

Superior Court County of Los Angeles

_____

Sharon M. Jones, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Lance E. Winters, Senior Assistant Attorney General, Paul M. Roadarmel, Jr., Supervising Deputy Attorney General, Stephanie A. Miyoshi, Deputy Attorney General, for Plaintiff and Respondent.