Filed 3/1/16  Reed-Nickerson v. Yreka Western Railroad Co. CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Siskiyou)

----

| | |
|---|---|
| JOAN REED-NICKERSON et al., | C078267 |
| Plaintiffs and Respondents, | (Super. Ct. No. SCCVCV12-1055) |
| v. | |
| YREKA WESTERN RAILROAD CO. et al., | |
| Defendants; | |
| RAILROAD SERVICES & SUPPLY COMPANY, INC., | |
| Claimant and Appellant. | |

Third party claimant and appellant Railroad Services & Supply Company, a Nevada corporation (RS&S Nevada), appeals from a judgment denying its third party claim.  At the hearing on the claim, RS&S Nevada sought to establish a superior security interest in a steam locomotive using noncertified records from a related federal proceeding and other noncertified documents.  Judgment creditor and respondent Chelatchie Boiler Works, Inc. (Chelatchie) objected on the grounds that the documents were not properly authenticated.  The trial court sustained the objection, and subsequently denied the claim.  Finding no error, we affirm the judgment.

1

## I. BACKGROUND

In March 2013, Chelatchie obtained a default judgment against defendant Yreka Western Railroad Company (Yreka Western), which is not a party to this appeal. As part of the default judgment, the trial court found that Chelatchie was entitled to possession of a Baldwin 2-8-2 steam locomotive that had been pledged as security for a loan.

RS&S Nevada filed a third party claim pursuant to Code of Civil Procedure section 720.210 et seq. The claim asserted that RS&S Nevada had a superior interest in the steam locomotive as assignee of the judgment creditor in a previous action, *Cecil, et al. v. Rocky Mountain Railway and Mining Museum, et al.*, U.S. District Court, Eastern District of California, case number 2:07-CV-00419-GEB-KJM (the federal action). Specifically, the claim asserted that Lynn T. Cecil and Suzie Cecil, trustees of the Cecil Family Revocable Trust, Rick Cecil and Lynette Cecil (collectively, the Cecils) acquired a security interest in the locomotive by means of an instrument dated January 21, 2000. The instrument was allegedly recorded with the U.S. Surface Transportation Board (STB) on November 12, 2004, approximately four years before Chelatchie perfected its security interest.[1]

The Cecils brought the federal action to enforce the instrument, and obtained a judgment giving them the right to foreclose on the locomotive. (See *Cecil v. Rocky Mountain Railway and Mining Museum* (E.D.Cal. 2008) 543 F.Supp.2d 1145, 1147.) The Cecils then assigned the judgment to John C. Nixon and Lisa L. Nixon, Trustees of the John and Lisa Nixon Family Trust (the Nixons), who subsequently assigned the judgment to Railroad Services & Supply Co., Inc., a California corporation (RS&S California). Although not spelled out in the original third-party claim, RS&S Nevada

---

[1] STB is the federal agency responsible for regulating railroads. (See 49 U.S.C. § 10501 et seq.)

would later assert that RS&S Nevada succeeded to RS&S California's rights under the judgment by merger.

The trial court held an evidentiary hearing on RS&S Nevada's third party claim on May 30, 2014. At the beginning of the hearing, RS&S Nevada's trial counsel explained that RS&S Nevada intended to prove the third party claim with documentary evidence only. RS&S Nevada offered the following proposed exhibits: (1) a copy of the Public Access to Court Electronic Records (PACER) system docket for the federal action (Exhibit A); (2) a copy of the complaint in the federal action (Exhibit B); (3) a copy of a February 26, 2008, order granting summary judgment in the Cecils' favor and finding that the Cecils held an enforceable security interest in the steam locomotive (Exhibit C); (4) a copy of the judgment entered in the Cecils' favor in the federal action (Exhibit D); (5) a copy of an amended judgment entered in the Cecils' favor in the federal action (Exhibit E); (5) a copy of an order awarding attorneys' fees to the Cecils in the federal action (Exhibit F); (6) a copy of a federal statute entitled, "Equipment trusts: recordation; evidence of indebtedness," 49 U.S.C. § 11301 (Exhibit G); (7) a copy of a November 12, 2004, letter from Fritz Kahn, counsel for the Cecils, to the Honorable Vernon A. Williams, secretary of the STB, enclosing a copy of a security agreement dated January 21, 2000, between the Cecils and Yreka Western covering the steam locomotive (Exhibit H); (8) a copy of a July 30, 2008, letter from Lisa L. Nixon to Secretary Williams, enclosing a copy of an acknowledgement of assignment of security agreement between the Cecils, as assignors, and the Nixons, as assignees, bearing an STB date stamp of July 31, 2008, (Exhibit I); (9) a copy of an acknowledgment of assignment of security agreement between the Nixons, as assignors, and RS&S California, as assignee, bearing an STB date stamp of July 9, 2012, (Exhibit J); (10) a copy of an "Agreement re Plan of Merger" between RS&S California and RS&S Nevada dated November 15, 2012, (Exhibit K); (11) a copy of an acknowledgment of assignment of security interest between RS&S California, as assignor, and RS&S Nevada, as assignee, dated January 2,

2013, (Exhibit L); (12) a copy of a certificate of revivor from the California Franchise Tax Board for RS&S California, effective May 8, 2014, (Exhibit M); (13) a copy of an online receipt reflecting payment of business license fees to the Secretary of State for the State of Nevada for RS&S Nevada (Exhibit N); and (14) a certified copy of a writ of execution for $146,447.38 in the federal action (Exhibit O).

Chelatachie stipulated to the admission of Exhibits G (the federal statute), N (the receipt), and O (the writ of execution), but objected to Exhibits A through F (the records from the federal action), and H through M (the security agreement, acknowledgements of assignment of the security agreement, merger agreement and certificate of revivor) on the grounds that they were not certified, and therefore, not sufficiently authenticated. RS&S Nevada responded that the exhibits were self-authenticating. The trial court, relying on Evidence Code section 1530, sustained the objection.[2]

Following oral argument on the merits of the third party claim (which was based on the proffered exhibits), the trial court admitted Exhibits G, N and O into evidence. The trial court retained the remaining exhibits in the event of reconsideration of its original ruling, and RS&S Nevada rested. Following supplemental briefing on various issues, including the admissibility of the proposed exhibits, the trial court took the matter under submission.

On December 3, 2014, the trial court entered an order affirming its ruling on the exclusion of the proposed exhibits and denying the claim. The trial court explained: "The court took under submission the issue of whether certain items of evidence offered by [RS&S Nevada] should be admitted. The court denies the request for submission on the grounds that the items do not meet the criteria for admission as required by the Evidence Code."

---

[2] Undesignated statutory references are to the Evidence Code.

4

The trial court continued: "The court finds that [RS&S Nevada] has not borne its burden of proof to support its claim against the subject property, the personal property commonly referred to in these proceedings as Baldwin Steam Locomotive No. 19, and that the third party claim to the subject property is invalid." Accordingly, the trial court rendered judgment in Chelatchie's favor and authorized Chelatchie and the sheriffs to proceed with the sale of the locomotive pursuant to a writ of execution.

RS&S Nevada filed a timely notice of appeal.

## II. DISCUSSION

On appeal, RS&S Nevada contends the trial court erred in excluding the documents that would have established its third-party claim. RS&S Nevada does not address the trial court's determination that the proposed exhibits were not properly authenticated. Instead, RS&S Nevada argues that the proposed exhibits were (1) admissible as official records affecting an interest in property pursuant to section 1600, (2) admissible under the official records exception to the hearsay rule pursuant to section 1280, and (3), with respect to the recorded security agreement and acknowledgments of assignment (Exhibits H, I, J and L), admissible as acknowledged instruments pursuant to section 1451. According to RS&S Nevada, admission of the proposed exhibits would have resulted in a ruling in its favor. RS&S Nevada fails to carry its burden on appeal.

A fundamental rule of appellate review is that the appealed judgment or order is presumed to be correct. On appeal, all intendments and presumptions are indulged in favor if its correctness and error must be affirmatively shown. (Eisenberg, et al., Cal. Practice Guide: Civil Appeals and Writs (The Rutter Group 2014) ¶ 8:15, p. 8-5; *Schnabel v. Superior Court* (1993) 5 Cal.4th 704, 718; *Denham v. Superior Court* (1970) 2 Cal.3d 557, 564.) Here, RS&S Nevada does not even address the trial court's stated reason for excluding the proposed exhibits, let alone explain why the trial court's reasoning was incorrect. Though RS&S Nevada offers various theories of admissibility, none of these theories address Chelatchie's authenticity objection, which was the basis

5

for the trial court's ruling. We therefore conclude that RS&S Nevada has failed to demonstrate error.

In any event, we see no error in the trial court's ruling. Section 1401 requires a writing to be authenticated before the writing or secondary evidence of its content may be received in evidence. " 'Authentication of a writing means (a) the introduction of evidence sufficient to sustain a finding that it is the writing that the proponent of the evidence claims it is or (b) the establishment of such facts by any other means provided by law.' " (*People v. Skiles* (2011) 51 Cal.4th 1178, 1187, citing § 1400.)

The proponent of the writing has the burden of establishing its authenticity. (§ 403, subd. (a).) The proponent's threshold burden "is *not* to establish validity or negate falsity in a categorical fashion, but rather to make a showing on which the trier of fact reasonably could conclude the proffered writing is authentic." (*People v. Valdez* (2011) 201 Cal.App.4th 1429, 1437.) The proponent's burden is met "when sufficient evidence has been produced to sustain a finding that the document is what it purports to be." (*Jazayeri v. Mao* (2009) 174 Cal.App.4th 301, 321.) We review a trial court's ruling that a writing has been sufficiently authenticated for abuse of discretion. (*People v. Hovarter* (2008) 44 Cal.4th 983, 1014.)

Here, RS&S Nevada proffered noncertified copies of records from the federal action (Exhibits A through F), the recorded security agreement (Exhibit H), acknowledgements of assignment of the security agreement (Exhibits I, J and L), a merger agreement (Exhibit K), and a certificate of revivor (Exhibit M). RS&S Nevada made no attempt to authenticate any of the proposed exhibits. Instead, RS&S Nevada argued that all of the proposed exhibits were "self-authenticating," an argument that founders on section 1530.

Section 1530, subdivision (a), provides, in pertinent part, that: "A purported copy of a writing in the custody of a public entity, or of an entry in such a writing, is prima facie evidence of the existence and content of such writing or entry if: [¶] (1) [t]he copy

6

purports to be published by the authority of the . . . public entity thereinin which the writing is kept; [¶] (2) [t]he office in which the writing is kept is within the United States . . . and the copy is *attested or certified as a correct copy* of the writing or entry by a public employee, or a deputy of a public employee, having the legal custody of the writing." (Italics added.)

Our Supreme Court considered section 1530 in *People v. Skiles*. There, the prosecutor presented certified copies of court records from Alabama to prove the defendant had suffered an out-of-state serious felony conviction for purposes of the three strikes law. (*People v. Skiles, supra*, 51 Cal.4th at p. 1181.) During the court trial on the prior conviction, the parties determined that the certified copies were incomplete. (*Ibid.*) During the lunch recess, the prosecutor obtained a faxed copy of a single page from the defendant's indictment from the Alabama clerk's office, which was admitted over the defendant's objection. (*Id.* at pp. 1181-1182.) The court of appeal upheld the trial court's ruling, finding that the content of the faxed copy was consistent with the original certified court records, which provided "sufficient evidence to sustain a finding that the faxed document was an accurate copy of an authentic court record" from Alabama. (*Id.* at p. 1182, 1188.) The Supreme Court affirmed, noting that, under section 1530, a certified copy of an official writing is "presumed to be authentic, unless the opponent presents evidence to overcome the presumption that it is a true and correct copy." (*People v. Skiles*, *supra,* at p. 1186.) Thus, "a properly certified copy of an official court record is a self-authenticated document that is presumptively reliable." (*Ibid.*) "Since a certified copy of an official writing 'is prima facie evidence of the existence and content of such writing or entry' under section 1530, we may infer that a noncertified copy, by itself, is not reliable enough to constitute such prima facie evidence. However, nothing in section 1530 forbids authentication by another method." (*People v. Skiles, supra*, at pp. 1186-1187.)

7

Here, RS&S Nevada proffered noncertified copies of court records and other documents, without making any attempt to authenticate the documents by circumstantial evidence or other means. Following *People v. Skiles* we conclude that RS&S Nevada's noncertified copies, by themselves, were not reliable enough to constitute prima facie evidence of the existence and content of the proposed exhibits. We reject RS&S Nevada's attempt to distinguish *People v. Skiles* as a criminal case, noting that sections 1401 and 1530 apply equally to civil litigation and criminal prosecutions. Having concluded that RS&S Nevada failed to carry its initial burden of producing sufficient evidence of authenticity, we need not consider whether the proffered exhibits were otherwise admissible pursuant to sections 1280, 1451 or 1600.

### III. DISPOSITION

The judgment is affirmed. Respondent Chelatchie Boiler Works, Inc. shall recover its costs on appeal. (Cal. Rules of Court, rule 8.278(a)(1) & (2).)


/S/
_____
RENNER, J.


We concur:


/S/
_____
RAYE, P. J.


/S/
_____
ROBIE, J.

8