# IN THE SUPREME COURT OF CALIFORNIA

FRANK C. HART et al.,
Plaintiffs and Respondents,

v.

KEENAN PROPERTIES, INC.,
Defendant and Appellant.

S253295

First Appellate District, Division Five
A152692

Alameda County Superior Court
RG16838191

May 21, 2020

Justice Corrigan authored the opinion of the Court, in which Chief Justice Cantil-Sakauye and Justices Chin, Liu, Cuéllar, Kruger, and Groban concurred.

HART v. KEENAN PROPERTIES, INC.,

S253295

Opinion of the Court by Corrigan, J.

We granted review to determine whether a company's name and logo appearing on an invoice can constitute hearsay. Under the facts presented, a witness's observation of the name and logo was circumstantial evidence of identity, not proof of the truth of matters asserted in the document. Because the observation was not offered for a hearsay purpose, defendant's hearsay objection was properly rejected.

## I. FACTS

After Frank Hart developed mesothelioma, he and his wife, Cynthia, sued Keenan Properties, Inc. (Keenan) and other entities involved in the distribution and use of pipes containing asbestos. Only Keenan's liability is at issue, and turns on whether sufficient evidence shows it was the source of the pipes.

From September 1976 to March 1977, Hart installed pipes for Christeve Corporation (Christeve) in McKinleyville. His job involved cutting and beveling asbestos-cement pipe manufactured by the Johns-Manville Corporation (Johns-Manville). Although the process released dust, Hart worked without respiratory protection.

Keenan Pipe and Supply, a wholesale distributor, sold asbestos-cement pipe between 1965 and 1983. In 1977, it changed its name to Keenan Supply. The logo for both Keenan Pipe and Supply and Keenan Supply was the letter "K" drawn

to resemble a straight pipe and an angled pipe, enclosed in a circle.[1] Successor Keenan retained no sales records or invoices from the relevant period. Its representative testified the company logo was originally rendered in green and white, then changed in the 1970s to red and white. The witness also acknowledged what appeared to be a copy of a Keenan invoice, which bore Keenan's name and logo. He agreed that Keenan would have sent a sales invoice to its customers.

Christeve's bookkeeper, Olga Mitrovich, testified that when Christeve closed in 2001, she retained no documents related to the McKinleyville project. She remembered the logo of Keenan Pipe and Supply as "the K with a circle around it." Asked why, she replied: "Because I know that we dealt with them, and [the logo] was unique, and I like it."

Foreman John Glamuzina was Hart's supervisor from January to March 1977.[2] He was familiar with asbestos-cement

---

[1] In 1983, Keenan Supply sold its name and most of its assets to Hajoca Corporation, which continues to use Keenan's logo:



(Keenan Supply | Eureka, CA <https://keenaneureka.com/> [as of May 21, 2020]. All internet citations in this opinion are archived by year, docket number and case name at <http://www.courts.ca.gov/38324.htm>.)

[2] Glamuzina was unavailable at the time of trial. The jury was shown video clips from his deposition testimony. (Evid. Code, § 1291); all further statutory references are to the Evidence Code.)

pipe, and recalled that it was used on the McKinleyville project. Glamuzina explained: "[T]here would be different invoices to sign when the truckers would come up with a load." When he received materials delivered to the worksite, he "would just check the load for my eight-inch pipe, shorts or whatever came on the pipe, that's all I would check on that." He would also check the invoices to make sure the supplies listed matched what was being delivered. If the information was correct, he signed the invoice and retained a copy, which he turned in to the site office. He did remember seeing the name "Keenan" on invoices but could not "recall exactly" how Keenan's name was printed or how many times he saw the name on invoices. He testified he did not see names of any other suppliers and explained that "[w]hen you're working out in the field, you're in a hurry . . . ." When asked why "Keenan sticks out in your mind," he replied: "Just the way the — their K and stuff is all — I don't know."

Keenan moved to exclude any reference by Glamuzina to Keenan invoices. It argued, inter alia, that any reference to "Keenan" on the invoices constituted inadmissible hearsay.[3] The court rejected Keenan's hearsay argument, giving two reasons. First it held the evidence was not hearsay but merely circumstantial evidence of identity. Second, even if hearsay, the evidence fell under an exception as the statement of a party opponent. It admitted Glamuzina's testimony as to the name and logo he saw printed on the invoices given to him when pipes

---

[3] Keenan also argued that the invoices did not exist, and if they did exist, they were not authenticated.

were delivered.  Keenan did not request a limiting instruction on the permissible consideration of Glamuzina's testimony.

The jury returned a plaintiff's verdict, with a special finding that Hart was exposed to asbestos from pipe supplied by Keenan.  Following apportionment of fault and settlements by other defendants, a judgment of $1,626,517.82 was entered against Keenan.

The Court of Appeal reversed, concluding Glamuzina's descriptions of the invoices were hearsay.  (*Hart v. Keenan Properties, Inc.* (2018) 29 Cal.App.5th 203, 213.)  We apply a different analysis to that question and reverse the judgment of the Court of Appeal.

## II. DISCUSSION

Hearsay is an out-of-court statement offered to prove the truth of its content.[4]  (*People v. Sanchez* (2016) 63 Cal.4th 665, 674.)  Section 225 defines the term "statement" as either "oral or written verbal expression" or "nonverbal conduct of a person intended by him as a substitute for oral or written verbal expression."  Verbal expression means "relating to, or expressed in words."  (Garner, Dict. of Modern American Usage (1998) p. 676; see also Black's Law Dict. (11th ed. 2019) p. 1870.)  Non-verbal expression refers to "conduct intended as a substitute for the actual use of words."  (*People v. Gonzalez* (2017) 2 Cal.5th 1138, 1143, fn. omitted.)  A document is generally a form of written verbal expression.  If it is prepared before trial and offered to prove the truth of the words it contains, it is hearsay.

---

[4]      " 'Hearsay evidence' is evidence of a statement that was made other than by a witness while testifying at the hearing and that is offered to prove the truth of the matter stated."  (§ 1200.)

As noted, the trial court relied on alternate theories to admit Glamuzina's testimony about the content of the invoices. First, it concluded that Glamuzina did not convey hearsay, because the name and logo were not offered to prove the truth of any statement contained in the invoice. Instead, his observations were circumstantial evidence of Keenan's identity as the source of the pipes. Based on the facts here, the court was correct. As a result, we do not further consider the alternative basis for its ruling.

## A. Relevance When Not Offered for Truth of Content

"When evidence that certain words were spoken or written is admitted to prove that the words were uttered [or written] and not to prove their truth, the evidence is not hearsay. (*People v. Smith*[ (2002)] 179 Cal.App.4th 986, 1003 . . . .)  (Text cited with approval in *People v. Armstrong* [ (2019)] 6 Cal.5th 735, 786 . . . .) 'The first and most basic requirement for applying the not-for-the-truth limitation . . . is that the out-of-court statement must be offered for some purpose *independent* of the truth of the matters it asserts.  That means that the statement must be capable of serving its nonhearsay purpose regardless of whether the jury believes the matters asserted to be true.  [Citations.]' (*People v. Hopson* [(2017)] 3 Cal.5th 424, 432 . . . .)"  (Simons, Cal. Evid. Manual (2020) Hearsay Evidence, § 2:5, p. 84.)  For example, suppose A hit B after B said, "You're stupid."  B's out-of-court statement asserts that A is stupid.  If those words are offered to prove that A is, indeed, stupid, they constitute hearsay and would be inadmissible unless they fell under a hearsay exception.  However, those same words might be admissible for a non-hearsay purpose:  to prove that A had a motive to assault B.  The distinction turns not on the words themselves, but what

they are offered to prove. The concept can prove analytically elusive when the words themselves also make an assertion. (See 1 Witkin, Cal. Evidence (5th ed. 2018) Hearsay, § 37, p. 832 ["The distinction between these two uses of the evidence is not always readily apparent"].) If the words are admitted for a non-hearsay purpose the jury is not allowed to consider the truth of any substantive assertion, and is often instructed to that effect.

Otherwise competent evidence must also be relevant. So, the non-truth purpose for which a statement is offered must be relevant. Evidence is relevant if it has a "tendency in reason to prove or disprove any disputed fact that is of consequence to the determination of the action." (§ 210.) Documents and other items found at a location may be relevant to show a person has a connection with that place. *People v. Goodall* (1982) 131 Cal.App.3d 129 held that various items, including documents, were admissible to show Goodall was linked to a home where drugs were manufactured. Evidence recovered at the site included a summons, various receipts, and Goodall's driver's license, as well as photographs of her at the residence. The court held that the documents were relevant regardless of the truth of their content. "Without considering the documents for the truth of the matter stated therein, it is relevant that documents bearing appellant's name or other items reasonably identifiable as appellant's were found at the residence. . . . The jury could infer that these items would not have been so located unless [Goodall]" had sufficient connection with the site to exercise control or was aware of the illicit activity there. (*Id.* at p. 143.)

The Harts rely principally on the similar case of *People v. Williams* (1992) 3 Cal.App.4th 1535 (*Williams*). Williams sought to establish standing to challenge an apartment search by offering proof he lived there. He called the searching officer

who had recovered a fishing license and a paycheck made out to him. Both documents, bearing the defendant's name and the apartment address, were recovered from a dresser in the bedroom where contraband was found. "The trial court opined that the documents were being offered for the truth of the matter being asserted therein — i.e., that the defendant lived at the apartment, as indicated by the address on the license and on the checks."[5] (*Id.* at p. 1541, fn. omitted.)

The Court of Appeal rejected that analysis. It explained that even if the documents had not contained the address of the searched apartment, "the fishing license and two checks at issue here are more likely to be found in the residence of the person named on those documents than in the residence of any other person." (*Williams, supra*, 3 Cal.App.4th at p. 1542.) In other words, the license and checks were not admitted to prove what the defendant's name was, that he was permitted to fish in California waters, or that the issuers of the checks paid him money in a certain amount. Instead, the fact that documents bearing his name were found at the apartment was relevant on a different point. They tended to support an inference that the person named lived there. The items were "circumstantial evidence that a person with the same name as the defendant resided in the apartment from which they were seized." (*Ibid.*)

In *Goodall* and *Williams* the documents were relevant regardless of their truth. It was the presence of the documents, not the truth of their content, that linked those defendants to the residences. Even if the documents bore false aliases, they could still be evidence of the disputed link, if it could be

---

[5] A second check made out to Williams was also found, but apparently did not bear his address.

established that Goodall and Williams used those false names. The documents were offered to prove the link, not the truth of the words on them. The same inference of a link could be drawn from the presence of items containing no hearsay at all, like a distinctive ring belonging to Goodall or a photo of Williams with his mother.

Here the disputed fact was whether Keenan supplied pipes for the McKinleyville project. To prove that fact, plaintiffs had to establish a link between Keenan and the pipes Glamuzina recalled being delivered. The appearance of the name and logo was relevant for that purpose, even if the company name and logo were not expressive of Keenan's identity as the source. If Keenan did not use its name and had no logo, the appearance of a document that could be shown to be theirs would be relevant evidence if offered to prove the link. Suppose that Glamuzina testified that the pipes were accompanied by a document bearing the legend: "Best Pipes On The Planet," and the company representative testified that Keenan printed that slogan on their invoices. That evidence, taken together would have a tendency in reason to prove the disputed link. The words would not be admissible to prove that Keenan's pipes were the best on Earth, as the slogan asserted. They would, however, be admissible as circumstantial evidence that the pipes that were delivered along with the identified invoice came from Keenan. The inference would be valid regardless of whether the assertion in the slogan is true. It is the combination of some characteristic that makes the document identifiable and the independent evidence connecting Keenan to the identifiable document that establishes the link. The fact that the point of identification is words is not sufficient to make

the words hearsay, unless the words are offered to prove the truth of their content.

Here the link between Keenan and the pipes does not depend on the word "Keenan" being a true statement that Keenan supplied the pipes. Instead, the link relies on several circumstances demonstrated by the evidence. The foreman testified that when the pipes were delivered, he was given an invoice bearing Keenan's name and logo and that the invoice matched the load delivered. Bookkeeper Mitrovich testified she would not pay for a delivery without receiving paperwork from the foreman. Keenan's representative identified its logo and testified that it was printed on Keenan invoices. He also confirmed the practice of providing an invoice to customers. Taken together, the evidence was relevant to prove the disputed link between Keenan and the pipes, regardless of the content the words on the invoice might otherwise have asserted.

## B. Other Arguments by Keenan

Keenan objects that the actual documents Glamuzina described were not available, and that their contents were not authenticated as required by section 1401. Those arguments are unavailing. The absence of a document does not always preclude admission of its contents. Although, generally, "oral testimony is not admissible to prove the content of a writing" (§ 1523, subd. (a)), such secondary evidence may be admitted "if the proponent does not have possession or control of a copy of the writing and the original is lost or has been destroyed without fraudulent intent on the part of the proponent of the evidence." (*Id.*, subd. (b).) Here, the Harts never possessed the documents and were not responsible for their destruction.

"Authentication is to be determined by the trial court as a preliminary fact (§ 403, subd. (a)(3)) and is statutorily defined as 'the introduction of evidence sufficient to sustain a finding that it is the writing that the proponent of the evidence claims it is' . . . (§ 1400)." (*People v. Goldsmith* (2014) 59 Cal.4th 258, 266.) "Essentially, what is necessary is a prima facie case. 'As long as the evidence would support a finding of authenticity, the writing is admissible. The fact conflicting inferences can be drawn regarding authenticity goes to the document's weight as evidence, not its admissibility.'" (*Id*. at p. 267.) "The determination regarding the sufficiency of the foundational evidence is a matter left to the court's discretion. [Citation.] Such determinations will not be disturbed on appeal unless an abuse of discretion is shown." (*People v. Brooks* (2017) 3 Cal.5th 1, 47.)

"The means of authenticating a writing are not limited to those specified in the Evidence Code. [Citations.] For example, a writing can be authenticated by circumstantial evidence and by its contents." (*People v. Skiles* (2011) 51 Cal.4th 1178, 1187 (*Skiles*).) Section 1410 clarifies: "Nothing in this article shall be construed to limit the means by which a writing may be authenticated or proved." In *People v. Gibson* (2001) 90 Cal.App.4th 371 (*Gibson*), manuscripts describing a prostitution enterprise were found in the appellant's hotel room and her home. The Court of Appeal acknowledged that "[t]here was no evidence presented that appellant actually wrote or typed either manuscript, nor were any fingerprints obtained from either document." (*Id*. at p. 382.) However, circumstantial evidence properly authenticated the manuscripts. "There are clear references to the author being 'Sasha,' one of appellant's aliases. The evidence clearly showed that appellant was operating as a

madam, that the manuscripts discussed the prostitution business, and that the locations where these items were seized were each a residence of appellant. Moreover, no evidence showed that these items belonged to anyone else." (*Id*. at p. 383.) We note here that authentication is a threshold admissibility question for the court, which may look to the document's content. Whether the trier of fact can consider the content of an admitted document for its truth in resolving a disputed fact is a separate question.

Here, evidence showed Keenan was in the business of selling asbestos-cement pipe and did business with Christeve. One of Glamuzina's duties was to check invoices. His description of the logo was consistent with the exemplar of a Keenan invoice that its representative acknowledged. The foundation for authenticity was sufficient.

Keenan seems to assert the invoices could be authenticated only by someone associated with Keenan. It urges that Glamuzina was not a party-opponent and "cannot stand in as a surrogate for Keenan." The argument fails. Glamuzina's testimony did not purport to make representations on Keenan's behalf. Rather, he conveyed his own observations of documents he reviewed when the pipes were delivered. (*People v. Veamatahau* (2020) 9 Cal.5th 16, 27.) Although testimony by Keenan's agent would have been another way to authenticate the invoices, it was not the only way.

Keenan also questions the trial court's reliance on Glamuzina's testimony, for several reasons. First, it states the evidence was provided by "an 81-year-old witness burdened by all the fallibility of human memory," and notes that the testimony related to events occurring 40 years earlier. A

witness's memory and credibility may affect how a court exercises its discretion, but it was for the trial court to evaluate Glamuzina's demeanor and testimony in deciding whether a preliminary fact had been adequately demonstrated.

Second, Keenan complains Glamuzina did not explain what he meant by "their K and stuff." However, there was evidence that Keenan used a distinctive K logo which continues in use today and which bookkeeper Mitrovich described as "unique." It was not unreasonable to infer Glamuzina was referring to the K logo acknowledged by Keenan's representative.

Third, Keenan asserts there were dissimilarities between Glamuzina's testimony and the invoice exemplar. In particular, when asked what information was on the invoices, Glamuzina responded, "[W]hat [the trucker] had on his load, and I'd just double-check it, see — usually it tells you where it came from. That's all." Asked what he meant by "where it came from," he responded, "What plant or — stuff like that . . . ." Keenan notes that the sample of a Keenan invoice does not identify a "plant." The exemplar does, however, include a street address in Los Angeles and lists various cities where Keenan apparently had offices. It is not clear what Glamuzina meant by "plant." But whatever ambiguity or dissimilarity is reflected in his recollection again goes to weight, not admissibility. The trial court's conclusion that the foundational evidence of authenticity was sufficient was neither arbitrary nor capricious.

Fourth, Keenan claims Glamuzina's testimony was inconsistent with the Harts' trial theory that the presence of a Keenan branch near the McKinleyville worksite supported the conclusion that the pipe was theirs. Asked how Christeve

ordered materials for the McKinleyville job, Glamuzina said Christeve's owner "would order his pipe down in Southern California and whatever they did to get it to up north." He was then asked, "So to the best of your understanding, he ordered from someone in Southern California, and Keenan was delivering it to the jobsite in Northern California?" Glamuzina confirmed that understanding. Subsequently asked whether the owner "would get supplies from Southern California," Glamuzina responded, "He would order pipe . . . down there, and it would always come from up north or wherever we were working, it would always come from a different place." It is not clear that Glamuzina's testimony was inconsistent with the Harts' reliance on the proximity of a Keenan branch to the worksite. But regardless of how any inconsistency might be weighed by the jury, it does not follow that the trial court abused its discretion in finding a preliminary showing of authenticity.

In addition to challenging the adequacy of Glamuzina's testimony, Keenan contends contrary evidence precludes a finding of adequate authentication. It cites other invoices showing that Johns-Manville sold asbestos-cement pipe to Christeve and shipped it to the McKinleyville site. The court admitted two invoices from Johns-Manville to Christeve and a letter from Christeve to Johns-Manville, based on Olga Mitrovich's recognition of handwriting on those items, but it excluded other Johns-Manville invoices. According to Glamuzina, more than 60,000 feet of asbestos-cement pipe was installed at the McKinleyville site. While relevant, evidence that a different company supplied asbestos-cement pipe to the worksite does not preclude an inference that Keenan did as well.

Keenan also relies on various cases to argue the authentication evidence was inadequate. It relies principally on

*Osborne v. Todd Farm Service* (2016) 247 Cal.App.4th 43. Osborne was injured while moving hay bales. She sought to establish that Berrington, a hay supplier, had sold a particular bale to Todd Farm Service. The trial court rejected the plaintiff's offer to testify that she saw a delivery person from Todd Farm Service with a receipt identifying Berrington as the supplier of the bale. The Court of Appeal upheld the ruling. It noted the plaintiff did not possess the receipt, no other witness claimed to have seen it, and Todd Farm Service, "the alleged source of the document, testified that no such receipt ever existed. [Todd] did not segregate hay in his barn by supplier and he did not document the supplier of hay included in any delivery. Based on this evidence, it was well within the trial court's discretion to find that [the plaintiff] failed to prove the preliminary facts necessary to admit her testimony about the delivery receipt into evidence." (*Id*. at p. 53.)

This case is different from *Osborne*, where all evidence except the plaintiff's recollection showed no such receipt ever existed. In contrast, Keenan admitted it sent invoices and acknowledged an exemplar with a Keenan logo on it. Reviewing invoices was one of Glamuzina's responsibilities, which lends weight to his recollection of how the invoices looked. In addition, the invoices were seen at a worksite accompanying a delivery of asbestos-cement pipe, a product Keenan sold. *Osborne* concluded only that the trial court in that case did not abuse its discretion in excluding the evidence. That holding does not preclude a different court, faced with some but not all of the circumstances present in *Osborne,* from exercising its discretion differently.

Finally, Keenan argues that other cases suggest a document cannot be authenticated if there is no copy before the

court and only one witness testifies to seeing the document. It points to *Skiles, supra,* 51 Cal.4th at page 1182; *People ex rel. Harris v. Sarpas* (2014) 225 Cal.App.4th 1539, 1570-1571; *Gibson, supra,* 90 Cal.App.4th at page 379; and *Young v. Sorenson* (1975) 47 Cal.App.3d 911, 915-916. Those cases do not sweep as broadly as Keenan contends. As noted, section 1523, subdivision (b) provides that the contents of a writing may be proven by oral testimony when the proponent does not have a copy and "the original is lost or has been destroyed without fraudulent intent on the part of the proponent of the evidence." The statute does not impose any additional evidentiary requirement. The strength of authenticity evidence in other cases does not establish the trial court abused its discretion here.

## III. DISPOSITION

The judgment is reversed and the matter remanded to the Court of Appeal for consideration of other contentions left unresolved.


**CORRIGAN, J.**


**We Concur:**

**CANTIL-SAKAUYE, C. J.**
**CHIN, J.**
**LIU, J.**
**CUÉLLAR, J.**
**KRUGER, J.**
**GROBAN, J.**

*See next page for addresses and telephone numbers for counsel who argued in Supreme Court.*

**Name of Opinion**  Hart v. Keenan Properties, Inc.
_____

**Unpublished Opinion**
**Original Appeal**
**Original Proceeding**
**Review Granted** XXX 29 Cal.App.5th 203
**Rehearing Granted**

_____

**Opinion No.** S253295
**Date Filed:**  May 21, 2020
_____

**Court:**  Superior
**County:**  Alameda
**Judge:**  Brad Seligman

_____

**Counsel:**

CMBG3 Law, W. Joseph Gunter and Gilliam F. Stewart for Defendant and Appellant.

Maune Raichle Hartley French & Mudd, David L. Amell, Marissa Y. Uchimura; Kazan, McClain, Satterly & Greenwood, Denyse F. Clancy and Ted W. Pelletier for Plaintiffs and Respondents.

The Arkin Law Firm and Sharon J. Arkin for Consumer Attorneys of California as Amicus Curiae on behalf of Plaintiffs and Respondents.

**Counsel who argued in Supreme Court (not intended for publication with opinion):**

W. Joseph Gunter
CMBG3 Law LLP
100 Spectrum Center Drive, Suite 820
Irvine, CA 92618
(949) 467-9500

Denyse F. Clancy
Kazan, McClain, Satterley & Greenwood
55 Harrison Street, Suite 400
Oakland, CA 94607
(510) 302-1000